**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| **PATRICK J. HOLLON,** *et al.* | **CIVIL ACTION NO. 3:22-CV-52-KKC** |
| **Plaintiffs,** | |
| **V.** | **OPINION AND ORDER** |
| **HCA HEALTCHARE, INC.,** *et al.* | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on two motions to dismiss (DE 16, 18) this action against certain defendants for lack of personal jurisdiction. For the following reasons, the Court will grant the motions.

**I. Background**

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16, 2022, he became extremely ill while working the night shift at his job at Audia International, Inc. in Frankfort, Kentucky. (DE 1-2, Complaint, ¶ 30.)  It was 93 degrees at Patrick's workplace, and he became confused and dizzy. (DE 1-2, Complaint, ¶ 30.)  At about 2:00 a.m., some coworkers packed him in ice and called 911 for an ambulance. (DE 1-2, Complaint, ¶ 30.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on

1

June 16, 2022. (DE 1-2, Complaint, ¶ 32.) The plaintiffs allege that the EMTs told the Medical Center staff that Patrick was suffering from a heatstroke. The Medical Center staff nevertheless misdiagnosed Patrick as suffering from a drug overdose. (DE 1-2, Complaint, ¶ 32.) According to the plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 1-2, Complaint, ¶ 33.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave.  (DE 1-2, Complaint, ¶ ¶  34-35.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 1-2, Complaint, ¶ 35.) The plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 1-2, Complaint, ¶ 38.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 1-2, Complaint, ¶ 39.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father picked him up and took him to Georgetown Hospital, where the staff diagnosed heat stroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022 but was not cleared to work until July 5, 2022. (DE 1-2, Complaint, ¶ 43.)

The plaintiffs in this action are Patrick, his wife, mother, and father. They assert multiple claims against five entities and 10 named individual defendants who were allegedly either officers, directors, or employees of the five entities. The five entities are HCA Healthcare, Inc.,

HCA Inc., Frankfort Regional Medical Center, the Frankfort Police Department, and the Franklin County Regional Jail.

The defendants who challenge this Court's personal jurisdiction over them are HCA Healthcare, Inc. and HCA Inc. and individual defendants John Franck and Samuel Hazen. [1] Hazen is the CEO of HCA Healthcare, Inc. ("HCA Healthcare) and Franck is senior vice president and legal and corporate secretary for the company. (DE 1-2, Amended Complaint, ¶ 12.) The plaintiffs allege that HCA Healthcare is a Delaware corporation with its principal office in Nashville, Tennessee. (DE 1-2, Amended Complaint, ¶ 6.) They allege that defendants Franck and Hazen both reside in Nashville, Tennessee. (DE 1-2, Amended Complaint, ¶¶ 17-18.) HCA Healthcare and HCA Inc. submit evidence that HCA Inc. is also a Delaware corporation with its principal office in Nashville. (DE 16-2, Bray Aff. ¶ 6.)

## II. Rule 12(b)(2) procedure

These four defendants move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. "The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

The court has three options for deciding a 12(b)(2) motion prior to trial: 1) the court can decide the motion upon the affidavits alone; 2) the court can permit discovery to decide the motion; or 3) the court can conduct an evidentiary hearing to resolve any factual disputes.

---

[1] The plaintiffs filed a "supplemental opposition" to all of these defendants' motions to dismiss. (DE 58, Supplemental Opposition.) In the supplemental opposition, the plaintiffs appear to argue that HCA Healthcare, HCA Inc., Hazen, and Franck have waived any objection to personal jurisdiction by filing "a Rule 12(b)(6) motion after a personal jurisdiction motion." None of these defendants have filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). Accordingly, the Court need not address this argument.

3

*Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

No matter which way the Court handles the motion, the plaintiff always has the burden of establishing personal jurisdiction. *Serras*, 875 F.2d at 1214. The weight of that burden, however, is heavier if the Court conducts an evidentiary hearing. In that case, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Id*. If the Court decides jurisdiction without an evidentiary hearing, however, the plaintiff must simply make a prima facie showing of personal jurisdiction. *Id*. A prima facie showing requires that the plaintiff present enough facts to establish with "reasonable particularity" sufficient contacts between the defendant and the forum state to support jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

When the Court decides the motion based only on the written submissions, and the defendant submits affidavits in support of the motion, the plaintiff cannot rely on the allegations in its pleadings to contest facts set forth in the defendant's affidavits. *Serras*, 875 F.2d at 1214. The plaintiff must respond with its own affidavits or other evidence contradicting the defendant's evidence. *Id*. If the plaintiff does submit such contradictory evidence, the court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). Instead, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). If the plaintiff's affidavits make out a prima facie showing of jurisdiction, the defendant's affidavits alone will not "suffice to rebut this showing." *Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 153 (6th Cir. 1997). A court is not required, however, to "ignore undisputed

4

factual representations of the defendant which are consistent with the representations of the plaintiff."*Id.*

The determination that the plaintiff has made a prima facie showing of personal jurisdiction does not relieve the plaintiff from ultimately having to prove jurisdiction by a preponderance of the evidence if the defendant again raises the jurisdictional issue later in the action. *Serras*, 875 F.2d. at 1214 (stating that, even if the court issues a pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense; a threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial from proving the facts upon which jurisdiction is based by a preponderance of the evidence); *Dean*, 134 F.3d at 1272 (defendant "can raise jurisdictional arguments during the trial as well.  It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction"); *Neogen Corp. v. U.S. Dept. of Justice*, 2006 WL 3422691, at * 7 n.4 (E.D. Ky. 2006).

### III. Requirements for personal jurisdiction

For personal jurisdiction to exist over a defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washin*gton, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction can either be specific or general depending on the type of minimum contacts in a case. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994). "General jurisdiction is proper only where a defendant's contacts with the forum state are of such

a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citation omitted). Specific jurisdiction, on the other hand, grants jurisdiction only when a claim arises out of or relates to a defendant's contacts in the forum state. *Id*.

For specific jurisdiction, the defendant's contacts with the forum state must satisfy both the state's long-arm statute and constitutional due process. *Bird*, 289 F.3d at 871; *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). The Kentucky Supreme Court has determined that the state's long-arm statute does not allow for personal jurisdiction to the full extent of the Due Process Clause. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). In other words, there may be situations where a defendant has sufficient contacts with the state to satisfy jurisdiction under the Due Process Clause, but the Kentucky statute still does not permit jurisdiction. *Id*. If a defendant's contacts, conduct, and activities do not fall within the conduct set forth in the long-arm statute, then the Court cannot exercise jurisdiction over the defendant, regardless of whether federal due process would allow it. *Id*.

Whether Kentucky's long-arm statute permits this Court to exercise jurisdiction over a defendant depends on whether that defendant has engaged in the actions set forth in the statute. For their argument that the Court can exercise personal jurisdiction over HCA Healthcare, Hazen, and Franck, the plaintiffs rely on the following four acts set forth in Kentucky's long-arm statute: transacting business in Kentucky; contracting to supply services or good in Kentucky;

committing an act or omission in Kentucky that causes personal injury; and causing tortious injury in Kentucky by an act or omission committed outside of Kentucky under certain conditions. Ky. Rev. Stat. § 454.210(1), (2), (3), (4). With regard to HCA Healthcare only, plaintiffs rely on one additional act set forth in the statute: contracting to insure a person, property, or risk located in Kentucky. Ky. Rev. Stat. § 454.210(7).  (DE 29, Response at 4; DE 30, Response at 4.)

Assuming the Kentucky long-arm statute allows for specific jurisdiction over an out-of-state defendant, the plaintiffs must still show that the exercise of such jurisdiction comports with the Due Process Clause. This requires that the plaintiffs sufficiently establish: 1) that the defendants purposefully availed themselves of the privilege of acting in the forum state or causing a consequence in the forum state; 2) that the cause of action arises from the defendants' activities in the forum state; and 3) that the defendants' acts or the consequences caused by the defendants' acts "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach. Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968); *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089-90 (6th Cir. 1989).

For either specific or general jurisdiction, the Court must also find that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tobin v. Astra Pharm. Prod*., Inc., 993 F.2d 528, 543 (6th Cir. 1993) (citation and internal quotation marks omitted); *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir. 2012).

### IV.  Motion to Dismiss by HCA Inc. and HCA Healthcare

Plaintiffs argue that HCA Healthcare is subject to both specific and general personal jurisdiction in Kentucky. For their argument that HCA Healthcare had the contacts with Kentucky required for both kinds of jurisdiction, the plaintiffs rely solely on the argument that HCA Healthcare is an alter ego of the Medical Center, which is a Kentucky resident. Thus, plaintiffs argue, the Medical Center's contacts with Kentucky can be imputed to its parent HCA Healthcare.

"[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir.2002)).

With regard to defendant HCA Inc., the plaintiffs state that they named it as a defendant only because it is a wholly owned subsidiary of HCA Healthcare and an "alter ego" of HCA Healthcare.  (DE 1-2, Amended Complaint, ¶ 19.) The plaintiffs make no allegations or submit any evidence that would support its conclusory assertion of an alter-ego relationship between these two corporations. In determining whether the plaintiffs have established a prima facie case for personal jurisdiction, the Court need not consider the plaintiffs' "conclusory statements" or "bare allegations." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017). "When deciding

personal jurisdiction without an evidentiary hearing—as here—the court must resolve factual disputes in favor of the plaintiff, but it need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Id*. (internal quotations and citations omitted). Based on the record before it, the Court cannot find that the plaintiffs have made a prima facie case that HCA Inc. is an alter ego of HCA Healthcare.

Moreover, even if HCA Inc. is an alter ego of HCA Healthcare, this would allow for jurisdiction by a Kentucky court over HCA Inc. only if the Court has jurisdiction over HCA Healthcare, which could be imputed to HCA Inc. Accordingly, this Court's jurisdiction over HCA Inc. depends upon a finding that the Court has personal jurisdiction over HCA Healthcare. If no such jurisdiction exists, the Court necessarily has no jurisdiction over HCA Inc.

As to whether the Court has personal jurisdiction over HCA Healthcare, plaintiffs have made both federal and state law claims against HCA Healthcare. Accordingly, the Court must look to both state law and federal law to determine whether the Medical Center is simply an alter ego of HCA Healthcare. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017). HCA Healthcare indicates that the state law that applies in making this determination is Kentucky state law. (DE 16-1, Mem. at 9-10 (citing *Inter-Tel Techs., Inc. v. Linn Station Props.*, LLC, 360 S.W.3d 152, 163-64 (Ky. 2012)). Plaintiffs do not argue that any other state law should apply.

Under Kentucky law, in determining whether to pierce the subsidiary's corporate veil, the Court must consider: "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Techs., Inc. v. Linn Station Props.*, LLC, 360

S.W.3d 152, 165 (Ky. 2012)). Under federal law, "a plaintiff must make out a prima facie case

(1) that there is such unity of interest and ownership that the separate personalities [of the two

entities] no longer exist and (2) that failure to disregard [their separate identities] would result in

fraud or injustice." *Anwar*, 876 F.3d at 849 (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073

(9th Cir. 2015)); *Bufco Corp. v. N.L.R.B.*, 147 F.3d 964, 969 (D.C. Cir. 1998).

The Kentucky Supreme Court has indicated the Court should consider the following

circumstances in analyzing the parent's domination of the subsidiary, which is the first prong of

the state's alter-ego analysis:

> a) Does the parent own all or most of stock of the subsidiary?
> b) Do the parent and subsidiary corporations have common
>    directors or officers?
> c) Does the parent corporation finance the subsidiary?
> d) Did the parent corporation subscribe to all of the capital stock of
>    the subsidiary or otherwise cause its incorporation?
> e) Does the subsidiary have grossly inadequate capital?
> f) Does the parent pay the salaries and other expenses or losses of
>    the subsidiary?
> g) Does the subsidiary do no business except with the parent or
>    does the subsidiary have no assets except those conveyed to it by
>    the parent?
> h) Is the subsidiary described by the parent (in papers or
>    statements) as a department or division of the parent or is the
>    business or financial responsibility of the subsidiary referred to
>    as the parent corporation's own?
> i) Does the parent use the property of the subsidiary as its own?
> j) Do the directors or executives fail to act independently in the
>    interest of the subsidiary, and do they instead take orders from
>    the parent, and act in the parent's interest?
> k) Are the formal legal requirements of the subsidiary not
>    observed?

*Inter-Tel Techs., Inc.*, 360 S.W.3d at 163-64, 165.

10

Of these, "the most critical factors" are: "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." *Id.* at 164.

Under federal law, in analyzing the "unity of interest and ownership" under the first prong of the alter-ego analysis, the Sixth Circuit has indicated the Court should consider whether the two corporations: (1) share the same employees and corporate officers; (2) engage in the same business enterprise; (3) have the same address and phone lines; (4) use the same assets; (5) complete the same jobs; (6) fail to maintain separate books, tax returns and financial statements; and (7) have a relationship in which one exerts control over the daily affairs of the other. *Anwar*, 876 F.3d at 849-50.

As to HCA Healthcare's ownership of the Medical Center's stock under the Kentucky state law analysis, HCA Healthcare Assistant Vice President of Financial Reporting Michael Bray asserts in an affidavit that HCA Healthcare "is the direct parent company of HCA Inc." and that "HCA Healthcare and HCA Inc. are indirect parent companies of" the Medical Center. (DE 16-2, Bray Aff. ¶ 8.)  He does not state whether HCA Healthcare owns most or all of the Medical Center's stock. In the Medical Center's disclosure statement, however, it asserts that it is HCA Healthcare's "subsidiary." (DE 8, Medical Center Disclosure Statement.) Thus, the Court will assume that HCA Healthcare owns more than 50 percent of the Medical Center's stock. *See* Subsidiary Corporation Definition, Black's Law Dictionary (11th ed. 2019) ("A corporation in which a parent corporation has a controlling share.")

As to the companies' common officers and directors, plaintiffs do not allege that the corporations have identical boards of directors. It alleges only that all of the Medical Center's officers and directors are also executives at HCA Healthcare. (DE 1-2, Amended Complaint ¶ 12.) Plaintiffs also submit the Medical Center's most recent annual report filed with the Kentucky Secretary of State, which indicates that all of the Medical Center's current officers and directors are located at HCA Healthcare's principal office in Nashville, Tennessee. (DE 30-3, Purdy Aff. ¶ 3(b) & Ex.) The defendants do not dispute any of this.

As to whether HCA Healthcare refers to the Medical Center as its own department or division, plaintiffs allege that "on its website and in its government filings, [HCA Healthcare] constantly refers to all [of its 187 hospitals] as 'our locations.'" (DE 1-2, Amended Complaint ¶ 13.) The defendants do not dispute that.

The plaintiffs do not make any allegations or submit any evidence from which the Court could reasonably infer, however, that HCA Healthcare finances the Medical Center; that HCA Healthcare caused the Medical Center to be incorporated; that the Medical Center has grossly inadequate capital; that HCA Healthcare uses the Medical Center's property as its own; that HCA Healthcare pays the salaries of the Medical Center's employees or that HCA Healthcare pays the Medical Center's other expenses or losses; that all of the Medical Center's assets were conveyed to it by HCA Healthcare, Inc; that the Medical Center only does business with HCA Healthcare; or that HCA Healthcare has disregarded the corporate formalities of the Medical Center.

The plaintiffs make allegations from which the Court could infer that the Medical

Center's officers and directors take certain orders from the parent. For example, as discussed, all of the Medical Center's officers and directors are executives at HCA Healthcare and work at HCA Healthcare in Nashville. Plaintiffs allege that HCA Healthcare dictates policies in various areas including employee training, ethics, legal compliance, patient safety and care, and human resources and that these policies apply to the Medical Center. (DE 1-2, Amended Complaint, ¶¶ 6, 15.) Plaintiffs also allege that the HCA Healthcare's Code of Conduct governs the Medical Center. (DE 1-2, Amended Complaint, ¶ 15.) However, the plaintiffs make no allegations or present any evidence from which the Court could reasonably infer that, in enacting these policies, the Medical Center's officers and directors do not act in the Medical Center's interest, but instead in HCA Healthcare's interests. *See Inter-Tel Techs., Inc.*, 360 S.W.3d at 165.

As to the factors under federal law, as discussed, plaintiffs do not allege that the corporations have identical boards of directors. They do allege that all of the Medical Center's officers and directors are also executives at HCA Healthcare (DE 1-2, Amended Complaint ¶ 12.) Plaintiffs have sufficiently alleged that HCA Healthcare and its subsidiaries are engaged in the same business enterprise, but they have not alleged that the corporations have the same address and phone lines, use the same assets, or complete the same jobs. Nor have the plaintiffs sufficiently alleged that the two corporations do not maintain separate books or file separate tax returns.

On the issue of the corporations' financial separateness, the plaintiffs allege that HCA Healthcare's only source of income is patient contracts and that the Medical Center's revenue and the revenue of the other 186 hospitals is "upstreamed" to HCA Healthcare. (DE 1-2, Amended

13

Complaint, ¶ 14.) The plaintiffs allege that the Medical Center's profits were reported on HCA's books. (DE 1-2, Amended Complaint, ¶ 14.) The defendants do not dispute this. Nevertheless, "[f]inancial benefits accruing to a corporate parent from a subsidiary's relationship to the forum state will not support the exercise of jurisdiction over the parent in that forum if the parent does not itself have a constitutionally cognizable contact with that forum state." *Mod. Holdings, LLC v. Corning Inc,* No. CIV. 13-405-GFVT, 2015 WL 1481443, at *10 (E.D. Ky. Mar. 31, 2015) (citation omitted). "[T]he fact that a parent corporation reports the financial results of its subsidiaries in the parent's financial statements is not proof of an alter ego relationship, even in situations where additional unity of interest and ownership factors are alleged." *NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at *6 (N.D. Cal. Jan. 29, 2015).

Moreover, the plaintiffs themselves point out that the 2021 HCA Healthcare Annual Report specifically provides that HCA Healthcare's ability to obtain cash from its subsidiaries is limited because "[e]ach subsidiary is a distinct legal entity, and, under certain circumstances, legal and contractual restrictions may limit our ability to obtain cash from our subsidiaries." (DE 30-3, Purdy Aff. At 5; HCA Healthcare 2021 Annual Report at 41.)

As to whether HCA Healthcare exerted control over the daily affairs of the Medical Center, this is really the ultimate issue under both state and federal law. The question is whether the plaintiffs have made a prima facie showing that HCA Healthcare has dominated the Medical Center to such an extent that the Medical Center is not a separate entity. *Inter-Tel Techs., Inc.*, 360 S.W.3d at 165; *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide,*

14

545 F.3d 357, 362 (6th Cir. 2008) (the court can exercise jurisdiction over a non-resident parent if the parent "exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.")

This requires a showing "that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former . . . [exercising] pervasive control over the subsidiary . . . from broad policy decisions to routine matters of day-to-day operation." *Anwar*, 876 F.3d at 849 (quoting *Ranza*, 793 F.3d at 1073). *See also Inter-Tel Techs., Inc.*, 360 S.W.3d at 164 (identifying as one of the "most critical factors" in the alter ego analysis " a "high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature").

Such domination is not showed merely by a parent having a controlling interest in its subsidiary. *Dean*, 134 F.3d at 1273-74. Moreover "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (citation omitted). "Thus, one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Gardemal v. Westin Hotel Co*., 186 F.3d 588, 594 (5th Cir. 1999) (citation and quotation omitted). Likewise, close ties between two companies through stock ownership, shared officers, financing arrangements, and the like cannot establish an alter-ego relationship. *Id*. at 593.

"The cases have uniformly held, therefore, that although stock ownership and identity of officers and directors naturally subject the subsidiary to a measure of control, the issue" with regard to an alter ego relationship "is how much control is exercised." *Miller v. Trans World Airlines, Inc.*, 302 F. Supp. 174, 178 (E.D. Ky. 1969) "[T]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 219 (5th Cir. 2000) (citation omitted). The parent must exercise such domination of the subsidiary's "finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." *Gardemal*, 186 F.3d at 594. "This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (quotation marks and citation omitted).

On the issue of the degree of control HCA Healthcare exerts over the Medical Center, HCA Healthcare's Bray states in his affidavit that HCA Healthcare does not exercise control over the Medical Center's "day-to-day operations" or employ the officers responsible for those operations. (DE 16-2, Bray Aff. ¶ 15, 18.) While the plaintiffs have alleged that HCA Healthcare establishes a code of conduct and certain policies for its medical centers (DE 1-2, Complaint, ¶ 16), Bray states that HCA Healthcare does not "exercise control over or have any role in the implementation or enforcement" of those policies or procedures. (DE 16-2, Bray Aff. ¶ 16.) Bray states that HCA Healthcare does not participate in patient care at the Medical Center or in clinical decisions. (DE 16-2, Bray Aff. ¶ 23.) He states that HCA Healthcare does not lease

16

property for or operate the Medical Center; own the buildings or equipment used by the Medical Center; make financial decisions for the Medical Center; or manage its billing or collection of fees. (DE 16-2, Bray Aff. ¶ ¶17, 19-21.) Bray states that HCA Healthcare does not hire, train, credential or supervise any personnel involved in caring for the Medical Center's patients. (DE 16-2, Bray Aff. ¶ 24.)

The plaintiffs cannot rely on contradictory allegations in their pleadings to dispute Bray's sworn statements regarding the relationship between HCA Healthcare and the Medical Center. *Serras*, 875 F.2d at 1214. Instead, the plaintiffs must point to any unrefuted allegations in their complaint or respond with their own affidavits or other evidence of HCA Healthcare's domination of the Medical Center. *Id.*

The plaintiffs cite a passage in the Annual Report stating that HCA Healthcare's "affiliates" provide certain services to its healthcare facilities. These services include accounting, legal, human resources, and internal auditing services. (DE 30-3, Purdy Aff. ¶ 4(c)). "[T]he mere fact that a parent corporation provides support services for its subsidiaries does not create agency or demonstrate an alter ego for jurisdictional purpose." *Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040, at *6 (D.S.C. July 25, 2019). Even if HCA Healthcare directly provided such services, that would reflect a normal parent-subsidiary relationship. *Trinity Indus., Inc. v. Greenlease Holding Co.*, No. CIV.A. 08-1498, 2014 WL 1766083, at *16 (W.D. Pa. May 2, 2014), *aff'd* 903 F.3d 333 (3d Cir. 2018). The provision of support services by the parent to the subsidiary "are part and parcel of the normal incidents of a parent-subsidiary relationship." *Nat'l*

*Prod. Workers Union Tr. v. CIGNA Corp.*, No. 05 C 5415, 2007 WL 1468555, at *10 (N.D. Ill. May 16, 2007).

In determining whether the plaintiffs have met their burden of establishing a prima facie case for personal jurisdiction over HCA Healthcare, the Court has considered the totality of the circumstances. Bray states in his affidavit that HCA Healthcare does not exercise control over the Medical Center's operations. In response, the plaintiffs point to 1) HCA Healthcare's majority ownership of the Medical Center; 2) the fact that all of the Medical Center's officers and directors are also executives at HCA Healthcare 3) HCA Healthcare policies and a code of conduct that apply to all its subsidiaries; 4) the fact that HCA Healthcare refers to its subsidiaries as its "locations," 5) the fact that HCA Healthcare depends upon the revenue generated by its subsidiaries, but only the revenue that can be provided to HCA Healthcare given the restrictions imposed by their status as separate legal entities, and 6) the fact that HCA Healthcare affiliates provide some services to the HCA Healthcare subsidiaries. These facts indicate a normal parent-subsidiary relationship, not a loss of corporate separateness as required under both state and federal law.

The Court agrees with the district court of Idaho, which was faced with the question of whether the plaintiffs in that case had sufficiently alleged that the acts of one of HCA Healthcare's subsidiaries should be imputed to HCA Healthcare for purposes of personal jurisdiction. *Spencer v. Greenwald*, No. 4:20-CV-00440-BRW, 2021 WL 1976080, at *1 (D. Idaho Jan. 4, 2021). There the court determined that the relationship between HCA Healthcare and the subsidiary healthcare facility did not have "the day-to-day intrusion" necessary to

18

disregard the subsidiary's corporate form. *Id*. at *4. Instead, the facts demonstrated a "normal course of business between a subsidiary and parent company as an investor." *Id*. Thus, the plaintiffs have not made sufficient allegations to establish a prima facie case that the Medical Center is the alter ego of HCA Healthcare.

Moreover, even if the plaintiffs had sufficiently established that there was no corporate separateness between HCA Healthcare and the Medical Center, the plaintiffs have made no allegations or presented any evidence from which the Court could find the second requirement for an alter-ego finding: circumstances under which continued recognition of the Medical Center corporation would sanction fraud or promote injustice. *Anwar*, 876 F.3d at 849; *Inter-Tel Techs., Inc*., 360 S.W.3d at 165.

In *Inter–Tel Technologies*, the Kentucky Supreme Court recognized some scenarios sufficient to satisfy this factor. 360 S.W.3d at 167–68. One such situation involves "a parent corporation causing a subsidiary's liability and then rendering the subsidiary unable to pay the liability." *Id*. Another such situation involves "'an intentional scheme to squirrel assets into liability-free corporations while heaping liabilities upon an asset-free corporation.'" *Id*. at 168 (citation omitted). The court went on to warn that "[c]ourts should not pierce corporate veils lightly but neither should they hesitate in those cases where the circumstances are extreme enough to justify disregard of an allegedly separate corporate unity." *Id*. The plaintiffs do not make any allegations from which the Court could infer that the extreme circumstances exist that would make recognition of the Medical Center as a corporation equivalent to sanctioning fraud or promoting injustice.

The plaintiffs have relied on the alter-ego theory to establish this Court's personal jurisdiction over HCA Healthcare. Because the Medical Center's actions in Kentucky cannot be imputed to HCA Healthcare under either federal or state law, the Court cannot exercise jurisdiction over HCA Healthcare. The Court cannot find that HCA Healthcare took any actions set forth in Kentucky's long-arm statute or that it took any actions in Kentucky that would satisfy the Due Process Clause. Accordingly, the Court must grant the motion to dismiss filed by HCA Healthcare and HCA Inc.

### V.   Motion to Dismiss by Hazen and Franck

Again, defendant Hazen is the president of the Medical Center and Franck is vice president. (DE 1-2, Amended Complaint, ¶ 12.) Both reside in Nashville, Tennessee. (DE 1-2, Amended Complaint, ¶¶ 17, 18.) Both challenge this Court's personal jurisdiction over them.

The plaintiffs argue that the Court has both general and specific jurisdiction over Hazen and Franck. For their argument that this Court has general jurisdiction over Hazen and Franck, plaintiffs point out that Hazen is president of the Medical Center in Frankfort, Kentucky and of the Tristar Greenview Regional Hospital in Bowling Green, Kentucky; and that Franck is vice president of the same two hospitals. (DE 29, Response at 2-3, 11.) "It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Plaintiffs do not allege that either Hazen or Franck had any affirmative contacts with Kentucky other than serving as officers or directors of the Medical Center. Thus, the Court

20

cannot find that either of these defendants had the continuous and systematic contacts with Kentucky required for general jurisdiction.

As to specific jurisdiction, plaintiffs do not allege that Hazen or Franck engaged in any affirmative acts set forth in the Kentucky long-arm statute. The statute does provide that the failure to perform a required act within the state can establish personal jurisdiction. Ky. Rev. Stat. § 454.210(2)(a)(3)(4) (permitting Kentucky courts to exercise jurisdiction over a person who caused tortious injury by an omission in Kentucky). The plaintiffs do not, however, allege any particular act that either Hazen or Franck was supposed to perform in Kentucky but failed to perform. The complaint alleges that Hazen and Franck "were responsible for formulating and enforcing policies and procedures for all locations of [HCA Healthcare], including [the Medical Center]," (DE 1-2, Amended Complaint, ¶ 52), and that these defendants failed "to police and enforce the HCA Code of Conduct and policies." (DE 1-2, Amended Complaint, ¶ 64). The complaint does not explain what acts either Hazen or Franck were required to undertake in Kentucky – as opposed to Tennessee – to formulate policies and procedures or to properly "police and enforce" those policies and procedures. Nor do plaintiffs explain how the June 16, 2022 incident arose from any failure to act in Kentucky by Hazen or Franck.

The Kentucky long-arm statute also permits the Court to exercise jurisdiction over a person as to a claim arising from that person's omission *outside* of Kentucky if the person "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of

21

the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(4). As discussed, the plaintiffs do not make any allegations from which the Court could infer that either Hazen or Franck regularly does or solicits business in Kentucky or engages in any other persistent course of conduct in Kentucky or derives substantial revenue from goods used or consumed or services rendered in Kentucky. Nor do the plaintiffs make any allegations from which the Court could infer that any harm inflicted on the plaintiffs arose from any such acts by Hazen or Franck.

For all these reasons also, the Court could not infer that personal jurisdiction over Hazen or Franck comports with due process. Plaintiffs have not set forth sufficient facts that either of these defendants purposefully availed themselves of the privilege of acting or causing a consequence in Kentucky. Nor have they set forth sufficient facts that the plaintiff's cause of action arises from any activities by Hazen or Franck in Kentucky or that, through either actions or consequences, either of these defendants have a substantial enough connection with Kentucky to make this Court's jurisdiction over them reasonable." *Southern Mach. Co..*, 401 F.2d at 381. Accordingly, the Court will grant the motion to dismiss filed by Hazen and Franck.

### VI. Conclusion

For all these reasons, the Court hereby ORDERS that the motions to dismiss for lack of personal jurisdiction filed by defendants HCA Healthcare and HCA Inc., (DE 16) and defendants Hazen and Franck (DE 18) are GRANTED. The Court further hereby ORDERS that all claims against HCA Healthcare, HCA Inc., Samuel N. Hazen and John M. Franck are DISMISSED without prejudice.

This 16th day of May, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY