**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| **PATRICK J. HOLLON,** *et al.* | **CIVIL ACTION NO. 3:22-CV-52-KKC** |
| **Plaintiffs,** | |
| **V.** | **<u>OPINION AND ORDER</u>** |
| **HCA HEALTHCARE, INC.,** *et al.* | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on a motion for partial dismissal (DE 88) filed by the City of Frankfort and certain law enforcement officers employed by the Frankfort Police Department, who are named as defendants in this action.

## I.  Factual Allegations

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16, 2022, he became extremely ill while working the night shift at his job at Audia International, Inc. in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.)  It was 93 degrees at Patrick's workplace, and he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on

June 16, 2022. (DE 82, Complaint, ¶ 39.) The plaintiffs allege that the EMTs told the Medical Center staff that Patrick was suffering from a heatstroke. The Medical Center staff nevertheless misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.) According to the plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 1-2, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) The plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) The plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) The plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heat stroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022 but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now the plaintiffs' Second Amended Complaint. It asserts claims against five groups of defendants: 1) the Medical Center, certain of

its officers and directors, and certain employees of the Medical Center or individuals who work there; 2) HCA Healthcare, Inc. (which the plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain Frankfort Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which the plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

Various of these defendants have moved to dismiss the claims against them. Currently before the Court is the motion by the City of Frankfort, the chief of the Frankfort Police Department, and three law enforcement officers with the Frankfort Police Department (together, the "City Defendants").

Patrick asserts various constitutional claims against these defendants under 42 U.S.C. § 1983 (unreasonable arrest, cruel and unusual punishment, excessive force, deliberate indifference to medical needs) and also asserts a conspiracy with all other defendants to violate Patrick's constitutional rights. Patrick also asserts that the City Defendants violated his rights under the Kentucky Civil Rights Act and that they conspired with all other defendants to violate his rights under the KCRA. Patrick also asserts state law claim claims against these defendants for false arrest, intentional and negligent infliction of emotional distress, negligence, defamation, and assault and battery.  Finally, Patrick's wife, mother, and father also assert claims for negligent and intentional infliction of emotional distress against the City Defendants.

The City Defendants now move to dismiss: 1) all claims against the City of Frankfort and

3

Dustin Bowman, chief of the Frankfort Police Department; 2) the conspiracy claims under § 1983 and the KCRA against all City Defendants; 3) the claims for negligent and intentional infliction of emotional distress against all City Defendants by Patrick's wife, father, and mother; and 4) the defamation claim against all City Defendants.

## II. Analysis

### A. Claims against Chief Bowman and Officers in their Official Capacities

Patrick asserts his federal constitutional and state law claims against Frankfort Police Department law enforcement officers Austin Childers, Joel Dunnsmire, and Logan Sutton and Chief Bowman in both their official and individual capacities. The Court will dismiss the official capacity claims as redundant. This is because "[a] suit against an individual 'in his official capacity' is "essentially a suit brought directly against the local government unit." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989). A § 1983 action "normally should be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of that public official." *Id*. at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity ." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring official-capacity actions against local government officials. . . . " *Id*. at 167 n. 14.

Likewise, the plaintiffs' state-law claims against these defendants in their official capacities is essentially a suit against the city. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky.2001). Accordingly, the state-law claims asserted against the law enforcement officers and

4

Chief Bowman in their official capacities will also be dismissed.

**B. Constitutional claims against City of Frankfort and Chief Bowman, in his Individual Capacity**

Patrick asserts federal constitutional claims against the City of Frankfort for violating Patrick's constitutional rights and for conspiring with other defendants to violate Patrick's constitutional rights.

The city can be held liable for Patrick's claims under § 1983 only if "its policy or custom cause[d] the constitutional violation in question." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005). It cannot be liable solely because an employee committed a constitutional violation. "While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997).

A plaintiff can allege such a policy or custom in four ways. He can allege:

(1) the existence of an illegal official policy or legislative enactment;
(2) that an official with final decision making authority ratified illegal actions;
(3) the existence of a policy of inadequate training or supervision; or
(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

In response to the motion to dismiss, Patrick clarifies that his theory of liability for the

5

City of Frankfort is based on inadequate training or supervision and a custom of tolerance or acquiescing in federal rights violations. Patrick asserts that Chief Bowman "was aware of and endorsed [a] problematic relationship" between the police officers and ER personnel at the Medical Center. (DE 93, Response at 8.) He also asserts that Chief Bowman "failed to train the police to ensure that this relationship did not compromise their ability to exercise independent judgment and fulfill their responsibilities appropriately." (DE 93, Response at 9.)

As to what that "problematic relationship" between the Medical Center ER personnel and the Frankfort police officers was, Patrick asserts that the bodycam footage shows that officers Sutton, Childers, and Dunnsmire were "smitten" and "flirting" with the nurses at the Medical Center. (DE 82, Amended Complaint, ¶56.) Patrick asserts that, because of that relationship, the officers were "emotionally unable to decline" the nurses' demand that they arrest Patrick. (DE 82, Amended Complaint, ¶56.) Patrick also alleges that there is "an incestuous and very close relationship" between the city police officers and ER personnel because the officers believe they "may need emergency care at any time." (DE 82, Amended Complaint, ¶56.)

Thus, Patrick appears to assert that the City of Frankfort acquiesced in a relationship whereby police officers would falsely arrest individuals if the ER personnel at the hospital requested it. He alleges that the officers complied with the ER personnel's demands because the officers were either "smitten" with the ER personnel or because the officers depended on the ER personnel for medical care when the officers needed it.

Patrick does not allege that the City of Frankfort had a custom or policy that affirmatively condoned or encouraged the violation of civil rights. Instead, Patrick relies on theories of

6

"inaction" by the city: failing to train its employees not to engage in such violations and also acquiescing in such violations. For most claims of municipal liability based on theories of "inaction," plaintiffs must allege the existence of a "clear and persistent pattern of illegal activity" by the police officers. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014); *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996). Patrick does not allege any such pattern.

   In addition to alleging a pattern of constitutional violations, plaintiffs can also state a failure-to-train claim by alleging "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . . ." *Bd. of Cnty. Comm'rs of Bryan Cnty.  v. Brown*, 520 U.S. 397, 409 (1997). This mode of proof is "available in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (internal quotations, brackets and citation omitted).  For example, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Canton*, 489 U.S. at 390 n.10 (citation omitted).

   In such cases, the likelihood that a constitutional violation will occur "could lead to a finding that the policymaker's decision not to train reflects deliberate indifference" to the violation of that constitutional right. *Shadric*k, 805 F.3d at 739. Likewise, "[t]he high degree of predictability" may also support an inference that the municipality's indifference caused the

constitutional violation that was so predictable. *Id*. (citation omitted).

Here, Patrick alleges that the city failed to train its police officers that their relationship with the ER personnel at the hospital should "not compromise their ability to exercise independent judgment and fulfill their responsibilities appropriately." (DE 93, Response at 9.) That ER personnel at a hospital would demand that police officers mistreat patients at the hospital and that officers would comply with that demand is such an unlikely scenario and so unpredictable that the city could not be held liable for failing to train its officers not to engage in such behavior.

As to the § 1983 claims against Chief Bowman in his individual capacity, "[s]ection 1983 liability will not be imposed solely upon the basis of respondeat superior." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Patrick must allege that Chief Bowman "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id*. At a minimum, he must allege that Chief Bowman "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*.

Patrick does not allege that Chief Bowman directly participated in the alleged constitutional violations. He does not allege that Chief Bowman was present for Patrick's arrest or that Chief Bowman ever met Patrick. Instead, Patrick alleges that Chief Bowman is liable because he was responsible for "training, supervising, and establishing customs, practices, and policy for the City of Frankfort." (DE 82, Complaint, ¶ 27.) He also alleges that Chief Bowman approved of the "close relationship" between law enforcement officers and the Medical Center ER nurses. (DE 82, Complaint, ¶ 27.)

Even assuming, however, that any such relationship existed, and that Chief Bowman was aware of it, it is not reasonable to infer that Chief Bowman, therefore, implicitly authorized, approved of or knowingly acquiesced in unconstitutional conduct by law enforcement officers. Patrick alleges no facts from which it could be inferred that Chief Bowman was aware or should have been aware that ER personnel would demand that law enforcement officers engage in unconstitutional conduct or that the relationship was otherwise likely to result in unconstitutional conduct by the law enforcement officers.

Nor, as discussed, is it reasonable to infer that Chief Bowman was obligated to train law enforcement officers not to comply with any demands made by the Medical Center ER personnel that would violate the constitutional rights of the Medical Center's patients. As was the case with the city, Patrick alleges no facts from which it could be inferred that Chief Bowman had reason to suspect that the ER personnel at a hospital would demand that police officers mistreat patients at the hospital and that officers would comply with that demand. That situation is so unlikely that Chief Bowman could not be held liable for failing to train officers not to engage in such behavior.

Moreover, Chief Bowman cannot be liable in his individual capacity under § 1983 for a failure to train law enforcement officers. Such a claim "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 563 (6th Cir. 2011) (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008)). Thus, even if Patrick did adequately allege that Chief Bowman was a county policymaker and was deliberately indifferent to the need for officer training in a

9

particular area, "he would be liable, if at all, in his official capacity, i.e., rendering the County liable. *Id*.

Accordingly, Patrick's constitutional claims under § 1983 against the City of Frankfort and Chief Bowman, in his individual capacity, must be dismissed.

**C. State Law Claims against the City of Frankfort and Chief Bowman**

In addition to federal constitutional claims, Patrick also asserts state law claims for false arrest, violation of the Kentucky Civil Rights Act ("KCRA") and conspiracy to do the same, intentional and negligent infliction of emotional distress, negligence, defamation, and assault and battery against the City of Frankfort and Chief Bowman, in his individual capacity.

 The City of Frankfort argues that it is immune from liability for the state-law claims under Kentucky's Claims Against Local Governments Act ("CALGA"). The purpose of that act was to "to specify what damages could be obtained against local governments that are subject to common law judgments and what obligation a local government has to provide a defense for and pay judgments rendered against its employees for the tortious performance of their ministerial duties." *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003). A municipality, unlike a county, can be held vicariously liable for the torts of its employees. It is immune from suit "only for torts committed in the performance of legislative or judicial or quasi-legislative or quasi-judicial functions." *Id*. at 164.

The Kentucky Supreme Court has determined that a portion of CALGA "expressly disclaims any legislative intent ('except as otherwise specifically provided') to modify the existing immune status of any local government . . . ." *Id*. (citing KRS 65.2001(2)). Instead,

CALGA states that a municipality, like Frankfort, "is generally liable for torts committed by its employees while acting within the scope of their duties." *Lease v. City of Vine Grove*, No. 2017-CA-000087-MR, 2018 WL 6721273, at *2 (Ky. Ct. App. Dec. 21, 2018) (citing KRS 65.2001(1)(b)). The statute provides some exceptions to that liability in KRS 65.2003. *Id.* The city points out that the statute provides that a local government cannot be liable for:

> Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to. . . [t]he adoption or failure to adopt any ordinance, resolution, order, regulation, or rule.

Ky. Rev. Stat. § 65.2003(3)(a).

But the city also recognizes that Patrick does not allege that his injuries were caused by the adoption or failure to adopt any ordinance, resolution, etc. *Id.* He alleges that his injuries were caused by police action. Such action is not "legislative or judicial or quasi-legislative or quasi-judicial." *Day v. City of Henderson*, No. 2012-CA-002157-MR, 2014 WL 1882286, at *4 (Ky. Ct. App. May 9, 2014). This means the city is not immune under CALGA from liability for the plaintiffs' state-law claims that are based on *vicarious* liability.

CALGA does, however, prohibit a plaintiff from recovering punitive damages against a municipality. Accordingly, any claim for punitive damages against the City of Frankfort must be dismissed. *Schell v. Young*, 640 S.W.3d 24, 44 (Ky. Ct. App. 2021) (citing Ky. Rev. Stat. § 65.2002).

Likewise, Patrick's state-law claims against the city and Chief Bowman based on their

*direct* liability for negligent training or supervision fail. For these claims, the plaintiff must allege facts from which it could be inferred that the employer "knew or had reason to know of the risk that the employment created." *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. Ct. App. 2013); *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 32 (Ky. App. 2016).

The plaintiffs assert that Chief Bowman knew only of the "problematic relationship" between the police officers and ER personnel at the Medical Center. (DE 93, Response at 8.) The plaintiffs assert in their response that chief Bowman knew or should have known "that the incestuous relationship with ER personnel could cause serious harm unless training seeking to safeguard the public was enacted. . . ." (DE 93, Response at 11.) But the plaintiffs do not allege any other instances of these officers mistreating any other individual at the ER personnel's behest. Nor do the plaintiffs allege any other facts from which the Court could otherwise infer that either the City of Frankfort or Chief Bowman had reason to know that any of the officers who arrested Patrick posed a risk to the safety of others.

Accordingly, the Court will dismiss all state law claims against the City of Frankfort and Chief Bowman, in his individual capacity, that are based on direct liability for failing to train or supervise the law enforcement officers. The Court will not, however, dismiss the state-law claims against the city or Chief Bowman, in his individual capacity, that are based on vicarious liability.

### D. Federal and state conspiracy claims against all the City Defendants

The City Defendants also argue that Patrick has failed to sufficiently allege a conspiracy under § 1983 or under the Kentucky Civil Rights Act (KCRA).

Patrick sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.) As discussed, Patrick alleges that the city and the police officers became involved in the plot because the officers were smitten with the nurses at the Medical Center and dependent on the nurses for their own medical care. Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶ 56, 75, 77, 79, 85.)

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

For a § 1983 conspiracy, a plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted).

Under Kentucky law, a claim for civil conspiracy requires "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)) (internal quotation marks omitted). The elements of a civil conspiracy are: (1) an agreement or combination, (2) that is unlawful or corrupt, (3) entered into

14

by two or more persons, (4) for the purpose of accomplishing an unlawful goal. *Ellington v. Fed.*
*Home Loan Mortg. Corp.*, 13 F.Supp.3d 723, 730 (W.D. Ky. 2014). Likewise, a claim that
defendants conspired to violate the KCRA necessarily requires allegations that would support a
reasonable inference of some "single plan" or "agreement" among the defendants to violate the
statute.

Patrick's allegations in support of his conspiracy claims are speculative at best. He
alleges that the housekeeping staff was mad at his father for disciplining a staff member and so
they plotted with the Medical Center staff to mistreat Patrick while he was in the emergency
room. The plaintiffs never state who took part in the conversations between the housekeeping
staff and the medical personnel, when they occurred, or precisely what was said. Nor do they
explain why the Medical Center staff was willing to violate their professional responsibilities as
alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set
forth sufficient facts from which the Court could infer that any agreement existed among the
Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

Because the complaint does not sufficiently plead an agreement among the housekeeping
staff and the medical personnel to mistreat Patrick, it does not sufficiently plead that the police
officers became involved in any such conspiracy. Furthermore, even if the complaint did
sufficiently allege an agreement among the Medical Center medical personnel and housekeeping
staff, the complaint does not identify which police officers agreed with which medical personnel
to mistreat Patrick, when those conversations occurred, or precisely what the agreement was. In
their response, the plaintiffs cite paragraphs 68-85 of the complaint, none of which set forth the

allegations necessary to plead a conspiracy claim.

Moreover, as to the claim that the City Defendants conspired to violate the KCRA, the plaintiffs do not set forth what provision of the statute that the City Defendants allegedly conspired to violate. *See* KRS § 344.280.

Thus, the Court will dismiss Patrick's conspiracy claims under § 1983 and the KCRA against all the City Defendants for failure to state a claim.

### E. Emotional Distress Claims by Patrick's Wife, Father, and Mother against all the City Defendants

The City Defendants argue that Patrick's wife, father, and mother fail to state a claim against them for intentional or negligent infliction of emotional distress.

To set forth a claim for intentional infliction of emotional distress, a plaintiff must allege 1) intentional or reckless conduct by the wrongdoer; 2) conduct that is so outrageous and intolerable "that it offends against the generally accepted standards of decency and morality"; 3) "a causal connection between the wrongdoer's conduct and the emotional distress"; and 4) severe emotional distress. *Burgess v. Taylor*, 44 S.W.3d 806 (Ky. App. 2001).

For a claim of negligent infliction of emotional distress, a plaintiff must allege that the defendant owed the plaintiff a duty of care; that the defendant breached that duty; injury to the plaintiff;  and legal causation between the defendant's breach and the plaintiff's injury." *Osborne v. Keeny*, 399 S.W.3d 1, 17 (Ky. 2012).

The City Defendants point out that the complaint does not allege that any of them had any interaction with Patrick's family members at all. The plaintiffs do not respond to this argument. Their response to the motion to dismiss these claims consists of only the following

16

heading:

> ### G. COUNTS V AND VI MAY NOT BE DISMISSED BECAUSE INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS MAY BE PLEADED ALTERNATIVELY; NEITHER "FAILS AS A MATTER OF LAW"

(DE 93, Response at 13.) There is no text beneath the heading. It is unclear if the plaintiffs inadvertently failed to set forth any argument under the heading or if this statement is the extent of their argument. Regardless, the complaint does not allege that Patrick's wife, father, or mother had any interactions with any of the City Defendants. Accordingly, the claims for intentional and negligent infliction of emotional distress by Patrick's family members against all the City Defendants must be dismissed.

### F. Patrick's Defamation Claim against the Police Officers

Patrick asserts a claim for defamation against the City Defendants. He alleges that city police officers falsely repeated in Patrick's arrest record that he had overdosed on drugs and that "he had refused to leave" the Medical Center. (DE 82, Amended Complaint ¶ 114.)

Because Patrick asserts defamation by written word, his claim is for libel. *Fortney v. Guzman*, 482 S.W.3d 784, 789 (Ky. Ct. App. 2015). Slander is oral defamation while libel is written defamation. *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281, n. 7 (Ky. 2014).

For a defamation claim, plaintiffs must allege facts from which the following could be inferred: (1) "a false and defamatory statement concerning another," (2) "an unprivileged publication to a third party," (3) "fault amounting at least to negligence on the part of the publisher," and (4) "either actionability of the statement irrespective of special harm or the

existence of special harm caused by the publication." *Rieck v. Hous. Auth. of Covington*, No. 22-5788, 2024 WL 556221, at *5 (6th Cir. Feb. 12, 2024) (quoting *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014)).

Under Kentucky law, there are two kinds of libel claims: libel *per se* and libel *per quod*. *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1083 (W.D. Ky. 1995). "In a *per quod* action, the words themselves may or may not be defamatory. Courts focus not upon the actual meaning of the words but on the extrinsic facts which explain the meaning of the communications." *Id*. "[T]o establish an action for slander or libel *per quod*, a plaintiff must affirmatively prove special damages, i.e., actual injury to reputation." *Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017) (citation and brackets omitted).

The officers argue that Patrick's defamation claim fails because he does not allege "special damages" as required for a libel *per quod* claim. However, Patrick alleges that the officers falsely stated that he was engaged in criminal behavior. "When the communication concerns untrue allegations of criminal behavior or unfitness to perform a job, the communication is libelous per se or slanderous per se." *Fortney v. Guzman*, 482 S.W.3d 784, 789 (Ky. Ct. App. 2015). Thus, Patrick asserts a libel *per se* claim.

The officers argue that Patrick's defamation claim must be dismissed because he does not allege any special damages. The officers also argue that the complaint does not set forth any facts that would support Patrick's allegation that the allegedly false statement was made with "malice, hatred and ill-will." In a *per se* action, however, "there is a conclusive presumption of both malice and damage." *Fortney*, 482 S.W.3d at 789-90 (citation omitted).

18

The officers argue that the defamation claim must be dismissed because Patrick does not allege that the officers intentionally or negligently published the allegedly false statements in his arrest record. The officers point out that the complaint asserts that the officers merely wrote in the record what the Medical Center staff told them. For a defamation claim, "[p]ublication . . . must be shown to have been done either negligently or intentionally." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). However, "[t]he emphasis is not upon the meaning of the remarks as being negligently or intentionally defamatory but rather upon the manner in which such remarks were conveyed." *Id*. at 273-74  The question to ask is "[w]ere the words either negligently or intentionally communicated as to be heard by an understanding third party?" *Id*. "Element three, publication, refers to intentional or negligent communication to someone other than the party defamed." *Grizzell v. City of Alexandria*, No. CIV.A. 14-50-DLB-JGW, 2015 WL 3463567, at *20 (E.D. Ky. June 1, 2015). Here, the complaint alleges that the officers intentionally published the statements by placing them in the arrest record.

The officers argue that the defamation claim must be dismissed because the facts set forth in the complaint do not allege that the false statements were unprivileged. However, the officers cite no authority under Kentucky law that would require the plaintiff to make such allegations in the complaint, and the Court has not located any. Whether a statement in a police report is privileged under Kentucky law, as it is in other states, is an issue that will likely be the subject of further briefing in this case. That issue, however, was not argued in this motion. The Court has found no authority holding that a defamation claim under Kentucky law must be dismissed when a plaintiff fails to allege in the complaint that the statement is not privileged.

19

The officers also argue that the statements at issue were simply "opinion." Statements of opinion cannot be the basis for a defamation claim unless the opinion "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Yancey v. Hamilton*, 786 S.W.2d 854, 857 (Ky. 1989) (quoting Restatement (Second) Torts § 566). The falsity requirement for a defamation claim "is met only if the statement in question makes an assertion of fact," meaning that the assertion "is capable of being proved objectively incorrect or otherwise connotes actual, objectively verifiable facts." *Doe 1 v. Flores*, 661 S.W.3d 1, 8 (Ky. Ct. App. 2022), *review denied* (Mar. 15, 2023) (citations and quotations omitted). The statements that Patrick had overdosed and refused to leave the Medical Center can be proved objectively incorrect or correct. Accordingly, they are not opinion statements.

The Court notes that the officers have not yet asserted any claim for qualified immunity. The only arguments the officers present against the defamation claim are discussed above. Because none of these arguments warrants dismissal of the claim, the Court will deny the motion to dismiss this claim against Officers Sutton, Childers, and Dunnsmire and also against the City of Frankfort and Chief Bowman based on vicarious liability.

## III. Conclusion

For all these reasons, the Court hereby ORDERS that the City Defendants' motion to dismiss (DE 88) is GRANTED in part and DENIED in part as follows:

1) The motion is GRANTED as to the following claims, all of which are DISMISSED:

   a) All official capacity claims against Police Chief Bowman and Officers Sutton, Childers, and Dunnsmire;

b) The constitutional claims under § 1983 against the City of Frankfort and Chief Bowman;

c) Any claim for punitive damages against the City of Frankfort;

d) The state-law claims against the City of Frankfort and Chief Bowman that are based on direct liability for negligent training or supervision;

e) The conspiracy claims against all City Defendants under § 1983 and the KCRA; and

f) The claims for intentional and negligent infliction of emotional distress against all the City Defendants by Patrick's mother, father, and wife.

2) The motion is otherwise DENIED;

3) As a result of this opinion, the remaining claims against the City of Frankfort and Chief Bowman in his individual capacity are Patrick's state law claims based on vicarious liability for false arrest, violation of the KCRA, intentional and negligent infliction of emotional distress, negligence, defamation, and assault and battery; and

4) As a result of this opinion, the remaining claims against Officers Sutton, Childers, and Dunnsmire are Patrick's claims against these officers in their individual capacities for constitutional violations under § 1983 and the state law claims for false arrest, violation of the KCRA, intentional and negligent infliction of emotional distress, negligence, defamation, and assault and battery.

This 12th day of March, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY