UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| PATRICK J. HOLLON, *et al.* | CIVIL ACTION NO. 3:22-CV-52-KKC |
| Plaintiffs, | |
| V. | OPINION AND ORDER |
| HCA HEALTHCARE, INC., *et al.* | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion to dismiss (DE 98) Plaintiffs' Second Amended Complaint filed by defendant Richard Mazzacone.

## I.  Allegations

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16, 2022, he became extremely ill while working the night shift at his job at Audia International, Inc. in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.)  It was 93 degrees at Patrick's workplace, and he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on June 16, 2022. (DE 82, Complaint, ¶ 39.) Plaintiffs allege that the EMTs told the Medical Center staff that Patrick was suffering from heatstroke. The Medical Center staff nevertheless misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.)

According to Plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 82, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) Plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) Plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heatstroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022, but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now Plaintiffs' Second Amended Complaint. It asserts claims against five  groups of defendants: 1) the Medical Center, certain of its officers and directors, and certain employees of the Medical Center or individuals who work there; 2) HCA Healthcare, Inc. (which Plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain Frankfort

Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which Plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

Various of these defendants have moved to dismiss the claims against them. Currently before the Court is the motion by Richard Mazzacone, who is identified in the Second Amended Complaint as an employee of the Franklin County Jail. (DE 82, Amended Complaint ¶33.)

The Second Amended Complaint contains only two allegations about Mazzacone: 1) he did a head count and medical rounds with a defendant identified as "Nurse Thacker" at the jail sometime after 2:30 p.m. on the day that Patrick Hollon was jailed but did not decide that Patrick needed to be referred for emergency medical care; and 2) that he updated an incident report that is contained in the jail record. (DE 82, Amended Complaint ¶¶53, 54.)

As to the claims that Plaintiffs assert against Mazzacone, the Court construes the complaint to assert the following:

- Patrick's claim for conspiracy to violate and the violation of his constitutional rights against excessive force and false arrest and his right to adequate medical care while in pretrial detention, all in violation of 42 U.S.C. § 1983 (Count 3)
- Patrick's claim for violation of and conspiracy to violate Patrick's rights under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq*. to be free from disability discrimination, defamation, excessive force, false arrest, and false prosecution, and his right to adequate medical care while in custody (Count 4)
- All plaintiffs' claims for intentional infliction of emotional distress (Count 5)
- All plaintiffs' claims for negligent infliction of emotional distress (Count 6)
- Patrick's claim for wrongful detention (Count 7)
- Patrick's claim for negligence (Count 8)
- Patrick's claim for defamation (Count 9)

Mazzacone moves to dismiss each claim.

3

In their response, Plaintiffs concede that Patrick does not assert a constitutional claim for false arrest against Mazzacone. (DE 107, Response at 11.) Nor does the complaint allege that Mazzacone took any actions that caused Patrick's arrest or detention. Accordingly, the Court will dismiss any claim against Mazzacone based on false arrest.

Plaintiffs do not address Mazzacone's argument that certain claims against him should be dismissed. "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-CV-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2023 WL 8373001 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007).

Plaintiffs do not address Mazzacone's argument that any claim against him based on excessive force should be dismissed. Nor do Plaintiffs allege that Mazzacone used any force on Patrick at all. Accordingly, the Court will dismiss any claim against Mazzacone based on excessive force.

Nor do Plaintiffs address Mazzacone's argument that any claim against him under the KCRA or conspiracy to violate the KCRA should be dismissed. Moreover, Plaintiffs do not identify in their complaint which provision of the KCRA Mazzacone allegedly violated or conspired to violate. Furthermore, a claim that defendants conspired to violate the KCRA necessarily requires allegations that would support a reasonable inference of some single plan or agreement among the defendants to violate the statute. *See Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co.*, 277 S.W. 3d 255, 261 (Ky. App. 2008) (discussing a civil conspiracy claim

4

under Kentucky law). As discussed further below, Plaintiffs do not sufficiently allege that any such plan or agreement existed or that Mazzacone entered into any such plan or agreement.

Accordingly, the Court will dismiss any claim against Mazzacone for violation of the KCRA or conspiracy to violate the KCRA.

Finally, Plaintiffs do not respond to Mazzacone's argument that any defamation claim against him must be dismissed. Defamation consists of "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014) (footnotes omitted). For this claim, Patrick alleges that some jail personnel repeated in jail records that Patrick had overdosed and refused to leave the hospital and that he was combative at the time of his arrest and had been combative in jail. (DE 82, Amended Complaint ¶114.) Patrick does not allege that Mazzacone himself made these statements. Accordingly, his defamation claim against Mazzcone must be dismissed.

That leaves Patrick's claims for conspiracy to violate and the violation of his constitutional rights to adequate medical care while in pretrial detention in violation of 42 U.S.C. § 1983 (Count 3); all Plaintiffs' claims for intentional infliction of emotional distress (Count 5); all Plaintiffs' claims for negligent infliction of emotional distress (Count 6); and Patrick's claims for wrongful detention (Count 7) and negligence (Count 8). The Court will address each of these claims below. Each claim is asserted against Mazzacone in both his official and individual

5

capacities. (DE 82, Amended Complaint ¶33.)

## II. Analysis

The two allegations against Mazzacone contained in the amended complaint are not sufficient to state any of these claims against him. On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).

To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

In their response brief, Plaintiffs make additional allegations about Mazzacone that they do not allege in the complaint. They allege that Mazzacone is liable because he had "direct and supervisory responsibility . . . for all of this." (DE 107, Response at 9.) Plaintiffs asserted the

same thing about Defendant and jail employee Ashley Mulder in response to her motion to dismiss. But in their complaint, the Plaintiffs never allege that Mazzacone or Mulder had any supervisory duties over jail personnel. Nor do they assert any theory of supervisory liability against him. They allege that only Jailer Jake Banta had the supervisory role at the jail. (DE 82, Amended Complaint ¶¶ 32, 80, 99, 109, 116, 123.)

Plaintiffs attach to their response an affidavit by their counsel, Kamp Purdy, in which he states that Franklin County Jailer Banta was not at the jail while Patrick was incarcerated there. He also asserts that Mazzacone was "Assistant Jailer" and that he would have assumed the jailer's responsibilities during Patrick's incarceration. (DE 107-1, Purdy Aff.)

On this motion to dismiss, the Court will not consider these new allegations in the response or Purdy's affidavit. In determining whether a plaintiff has made sufficient allegations to state a claim, the Court is limited to the allegations in the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, IncI.*, 108 F.3d 1546, 1554 (6th Cir.1997)).

The Court cannot consider new allegations in a response brief or in an affidavit submitted by plaintiff's counsel with the response. *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their disparate impact claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings.")

7

Moreover, an affidavit must be based on personal knowledge. Fed. R. Evid. 602. As the basis for his assertions in the affidavit, Purdy cites only a news article. He does not profess to have personal knowledge of the hierarchy at the jail or of the responsibilities of its employees.

In their response to the motion to dismiss, Plaintiffs also ask the Court to construe the complaint to assert that Mazzacone falsified a jail incident report written on June 16, 2022 to cover up wrongdoing. Plaintiffs allege in the complaint only that Mazzacone "updated" the report on June 30, 2022. (DE 82, Amended Complaint ¶ 54.) Plaintiffs assert in their response that the "clear inference" is that Mazzacone changed the report "to interfere with justice and conceal the culpability of the" Franklin County Jail and its employees.  (DE 107, Response at 6.) This, however, is not a fair inference from the allegations in the complaint. The only allegations that Plaintiffs make in the complaint about the incident report are the following:

> The jail record is an incident report written on 6/16/22 at 4:50 pm by Defendant Ashley Mulder. It reflects that Banta called in to Defendant Mulder at 15:47 pm. Mulder told Banta that she had been briefed about Hollon by Sarah Hill BUT Richard Mazzacone "updated" the report on 6/30 at 8:44. In the report Mulder stated: "I advised him [Banta] that several officers spoke to him [Patrick] and tried to help according to Hill. Hill had also spoken to father and he is here trying to get him released.

(DE 82, Amended Complaint, ¶ 54.)

It cannot be inferred from these assertions that Mazzacone falsified the report. If Plaintiffs wish to charge Mazzacone with falsifying jail records to cover up wrongful conduct by other jail personnel, then they were required to make that assertion in their complaint and to explain how that charge supports the elements of their claims against him.

8

### A.  Constitutional Right to Adequate Medical Care

As to Patrick's claim under 42 U.S.C. §1983 for violation of his constitutional rights to adequate medical care while in custody, at the time of the relevant events, Patrick had not been adjudged guilty of any offense. He was being held in jail just after his arrest. Thus, his inadequate medical care claim arises under the Due Process Clause of the Fourteenth Amendment. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024).

A plaintiff must make sufficient allegations to support the following for an inadequate-medical-care claim under the Fourteenth Amendment: (1) that the plaintiff had a sufficiently serious medical need and (2) that each defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 315-16 (quoting *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 596 (6th Cir. 2021). This standard is "something akin to reckless disregard." *Brawner*, 14 F.4th at 596 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.")

Plaintiffs have named numerous defendants, including numerous employees of the Franklin County Jail. On this motion, however, the Court must focus on the allegations made against Mazzacone in particular. "Because vicarious liability is inapplicable to *Bivens* and § 1983

suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Mazzacone does not dispute that Patrick has sufficiently alleged that he had an objectively serious medical need while in jail. However, Patrick has not pleaded any facts from which it could be fairly inferred that Mazzacone knew about that medical need or that Mazzacone knew that Patrick faced a high risk of harm if Mazzacone did not provide him with medical care or that Mazzacone should have known that Patrick faced such a risk.

"A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 318 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024) (quoting *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020). Of the two allegations in the complaint regarding Mazzacone, the only one relevant to his inadequate medical care claim is that Mazzacone did a head count and medical rounds with Nurse Thacker at the jail and neither decided that Patrick needed to be referred for emergency medical care. Plaintiffs appear to allege that this occurred sometime after 2:30 p.m. on the day that Patrick was jailed. (DE 82, Amended Complaint, ¶53.)

The issue is whether Plaintiffs have sufficiently alleged that Patrick's need for medical treatment was so obvious that Mazzacone as a layperson would or should have recognized it. While Plaintiffs allege in the complaint that Patrick was in a wheelchair when booked at the jail and that, at that time, he was "semi comatose," and "could not stand, and could not speak or understand what was going on," (DE 82, Amended Complaint ¶ 49), he does not allege that

10

Mazzacone was involved in booking Patrick.

The complaint does not allege what time Patrick was booked at the jail, but that had to have occurred sometime before 7:51 a.m., when Plaintiffs allege Patrick was involved in an altercation in his jail cell. (DE 82, Amended Complaint ¶ 51). Plaintiffs do not appear to allege that Mazzacone saw Patrick at all until sometime after 2:30 p.m., when they allege Patrick was involved in another altercation at the jail. Plaintiffs do not allege that Mazzacone and Patrick had any interaction at all. Plaintiffs make no allegations from which it could be inferred that, at the time that Mazzaone did the headcount, Patrick appeared "semi comatose" or otherwise exhibited any signs or symptoms from which Mazzacone would or should have known that Patrick faced a high risk of harm unless he received medical attention. Instead, they allege that around that time, Patrick was involved in an altercation that involved Patrick "sitting on another prisoner." (DE 82, Amended Complaint ¶53.)

Plaintiffs allege that Mazzacone did a head count "and medical rounds" with Nurse Thacker. Plaintiffs do not allege that Nurse Thacker informed Mazzacone that Patrick needed medical care. In fact, Plaintiffs allege that Nurse Thacker decided Patrick did not need medical care. Whether Nurse Thacker, a medical professional, knew or should have known that Patrick needed medical treatment at the time she conducted medical rounds is a different question than whether Mazzacone, a layperson, would or should have known Patrick needed medical treatment. The issue for Mazzacone's liability is whether, at the time he conducted the head count, Patrick's need for medical treatment was so obvious that even a layperson like Mazzacone would or should have recognized it. *Spears v. Ruth, 589 F.3d 249*, 255 (6th Cir. 2009)

("Therefore, plaintiffs have not established that McCargo's condition and need for medical attention, which was not obvious to trained medical personnel, would have been obvious to a layperson or to Officer Ruth—who was less able than EMTs to determine McCargo's medical needs.")

In their response, Plaintiffs allege that it should have been obvious to any layperson that Patrick needed medical treatment because:

1) Patrick had been wheeled into booking in a wheelchair;
2) Patrick was semi-comatose and could not answer any questions or fill out the intake forms;
3) Patrick could not change over into jail clothes;
4) Patrick got into an altercation but was unable to defend himself
5) jail records show that FCJ assumed that Patrick was a drug addict who had overdosed.

(DE 107, Response at 10-11.)

As discussed, Plaintiffs allege that the first three factors describe Patrick's condition at booking. (DE 82, Amended Complaint ¶ 49.) There is no allegation in the complaint from which it could be inferred that Mazzacone had any involvement with Patrick's booking or was otherwise informed of what Patrick's condition was when he was booked. As to the allegation that Patrick got involved in an altercation at the jail and was unable to defend himself or that jail personnel believed Patrick had overdosed, there are no allegations from which it can be inferred that Mazzacone knew anything about Patrick's altercations or ability to defend himself or that Mazzacone was told or believed Patrick had overdosed.

Plaintiffs do not allege that Mazzacone and Patrick had any interaction at all while Patrick was detained or that Mazzacone would have had any knowledge that Patrick needed

12

medical attention at the time Mazzacone conducted the head count. Accordingly, Plaintiffs claim against Mazzacone for inadequate medical care must be dismissed.

### B. Section 1983 Conspiracy Claim

As to Patrick's claim for a conspiracy to violate his rights under § 1983, he sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.)

Patrick alleges that the city of Frankfort and the police officers became involved in the plot because the officers were "smitten" with the nurses at the Medical Center and dependent on the nurses for their own medical care. (DE 82, Amended Complaint ¶ 56.)  Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶¶  56, 75, 77, 79, 85.) He does not allege, however, that Mazzacone or anyone employed by the jail agreed with any of the other defendants to violate any of Patrick's rights. Nor does he allege that Mazzacone agreed with other jail personnel to violate Patrick's rights.

For a § 1983 conspiracy, a plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted).

Patrick's allegations in support of his conspiracy claims are speculative at best. He alleges that the housekeeping staff was mad at his father for disciplining a staff member and so they plotted with the Medical Center staff to mistreat Patrick while he was in the emergency room. Plaintiffs never state who took part in the conversations between the housekeeping staff and the medical personnel, when they occurred, or precisely what was said. Nor do they explain why medical professionals were willing to violate their professional responsibilities as alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set forth sufficient facts from which the Court could infer that any agreement or single plan existed among the Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

Because the complaint does not sufficiently plead an agreement or single plan among the housekeeping staff and the medical personnel to mistreat Patrick, it does not sufficiently plead that Mazzacone became involved in any such conspiracy. Furthermore, even if the complaint did sufficiently allege an agreement or single plan among the Medical Center medical personnel and

14

housekeeping staff, the complaint does not make any allegations to support that Mazzacone took part in any such agreement or joined in any single plan. Plaintiffs do not allege that Mazzacone had any communications with Medical Center employees or with employees of the Frankfort police department. Nor does he allege that Mazzacone had communications with any other jail personnel amounting to an agreement or single plan to mistreat Patrick.

Thus, the Court will dismiss Patrick's conspiracy claim under § 1983 for failure to state a claim.

### C. State Law Tort Claims

### 1) Intentional and Negligent Infliction of Emotional Distress

All four plaintiffs assert state law claims for intentional and negligent infliction of emotional distress against Mazzacone.

To set forth a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege 1) intentional or reckless conduct by the wrongdoer; 2) conduct that is so outrageous and intolerable "that it offends against the generally accepted standards of decency and morality"; 3) "a causal connection between the wrongdoer's conduct and the emotional distress"; and 4) severe emotional distress. *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. App. 2001).

For a claim of negligent infliction of emotional distress (NIED), a plaintiff must allege that the defendant owed the plaintiff a duty of care; that the defendant breached that duty; injury to the plaintiff; and legal causation between the defendant's breach and the plaintiff's injury. *Osborne v. Keeny*, 399 S.W.3d 1, 17 (Ky. 2012). The plaintiff must allege a severe or serious emotional injury, meaning that "a reasonable person, normally constituted, would not be

expected to endure the mental stress engendered by the circumstances of the case." *Id*.

Plaintiffs' two allegations about Mazzacone's conduct do not support either of the emotional distress claims. (DE 82, Amended Complaint ¶ 90.) 1) He alleges only that Mazzacone did not decide that Patrick should be referred for medical care and that Mazzacone updated an incident report. Neither of these allegations are sufficient to allege a claim based on outrageous conduct or a breach of duty. As discussed above, the complaint does not allege any facts from which it could be inferred that Mazzacone had any knowledge that Patrick needed medical treatment or that Mazzacone should have known that Patrick needed medical treatment.

Further, the complaint does not allege that Mazzacone had any interactions with Patrick's wife or parents at all or even knew of their existence. Thus, their claim for intentional and negligent infliction of emotional distress must be dismissed.

Accordingly, the Court will dismiss all Plaintiffs' claims for negligent and intentional infliction of emotional distress.

**2) Negligence**

Patrick asserts a negligence claim against Mazzacone. To establish negligence, a plaintiff must show the defendant owed him a duty, the duty was breached, and there is a causal connection between the breach and the injury suffered. *Mullins v. Comm. Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Mazzacone owed a duty of care to the jail detainees, but a jailer "cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky. 1940)). For a jail employee to be liable for negligence for an injury

suffered by a detainee, "the employee must either know or have reason to know that the prisoner is at risk of harm and fail to take reasonable care to prevent the prisoner from harm." *Jerauld ex rel. Robinson v. Kroger*, 353 S.W.3d 636, 640 (Ky. App. 2011).

Plaintiffs have alleged no facts from which it could be fairly inferred that Mazzacone knew or had reason to know that Patrick faced a risk of harm because of his medical condition or that he was in need of medical care. Accordingly, his negligence claim against Mazzacone must be dismissed.

### 3) Wrongful Detention

The facts set forth in the complaint to support Patrick's wrongful detention claim against Mazzacone all deal with the jail personnel's alleged failure to provide adequate medical care to Patrick while he was incarcerated. (DE 82, Amended Complaint ¶104-05.) A wrongful detention claim, however, is not based on the failure to provide medical care to a detainee while in jail. Instead, it is based on the detention of an individual without probable cause, which "can happen when the police hold someone without any reason before the formal onset of a criminal proceeding" or "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Plaintiffs do not allege in their complaint that Mazzacone took any actions that caused or wrongfully prolonged Patrick's detention. Accordingly, the Court will dismiss any claim against Mazzacone based on wrongful detention.

17

### D. Official Capacity Claims

Plaintiffs assert their federal constitutional and state law claims against Mazzacone in both his official and individual capacities. The Court will dismiss the official capacity claims as redundant. This is because "[a] suit against an individual 'in his official capacity' is "essentially a suit brought directly against the local government unit." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989). A § 1983 action "normally should be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of that public official." *Id.* at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring official-capacity actions against local government officials. . . . " *Id.* at 167 n. 14. Likewise, the plaintiffs' state-law claims against Mazzacone in his official capacity are essentially claims against the county. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001). Accordingly, the state-law claims asserted against Mazzone in his official capacity will also be dismissed.

### III. Conclusion

For all these reasons, the Court hereby ORDERS that Mazzacone's motion to dismiss (DE 98) is GRANTED as follows:

1) all of the claims asserted by Patrick Hollon against Mazzacone in his individual and official capacities are DISMISSED;

2) all of the claims asserted by Patrick's mother, father, and wife against Mazzacone in his

individual and official capacities are DISMISSED; and

3) Mazzacone is DISMISSED as a defendant in this action.

This 18th day of July, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

19