UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| PATRICK J. HOLLON, *et al.* | CIVIL ACTION NO. 3:22-CV-52-KKC |
| **Plaintiffs,** | |
| V. | **OPINION AND ORDER** |
| HCA HEALTHCARE, INC., *et al.* | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on a motion to dismiss (DE 112) Plaintiffs' Second

Amended Complaint filed by defendant Ashley Mulder. It appears that Mulder's last name is

now King. However, because the Plaintiffs named Ashley Mulder in the complaint, the Court

will continue to refer to her as Mulder in this opinion.

## I.   Allegations

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16,

2022, he became extremely ill while working the night shift at his job at Audia International, Inc.

in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.)  It was 93 degrees at Patrick's workplace, and

he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers

packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on

June 16, 2022. (DE 82, Complaint, ¶ 39.) Plaintiffs allege that the EMTs told the Medical Center

staff that Patrick was suffering from heatstroke. The Medical Center staff nevertheless misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.) According to Plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 82, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) Plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) Plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heatstroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022, but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now Plaintiffs' Second Amended Complaint. It asserts claims against five  groups of defendants: 1) the Medical Center, certain of its officers and directors, and certain employees of the Medical Center or individuals who work

there; 2) HCA Healthcare, Inc. (which Plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain Frankfort Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which Plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

Various of these defendants have moved to dismiss the claims against them. Currently before the Court is the motion by Ashley Mulder, who is identified in the Second Amended Complaint as an employee of the Franklin County Jail. (DE 82, Amended Complaint ¶33.)

The Second Amended Complaint contains the following allegations about Mulder:

1) she wrote an incident report on June 16, 2022 at 4:50 p.m.;
2) Jailer Jake Banta called Mulder at 3:47 p.m., and she informed him that she had been "briefed about Hollon by Sarah Hill";
3) Mulder also advised Banta that Hill told her several officers spoke to Patrick and tried to help; and
4) Mulder advised Banta that Patrick's father said Patrick "got heat exhaustion at work."

(DE 82, Amended Complaint ¶ 54.)

As to the claims that Plaintiffs assert against Mulder, the Court construes the complaint to assert the following:

- Patrick's claim for conspiracy to violate and the violation of his constitutional rights against excessive force and false arrest and his right to adequate medical care while in pretrial detention, all in violation of 42 U.S.C. § 1983 (Count 3)
- Patrick's claim for violation of and conspiracy to violate Patrick's rights under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq.* to be free from disability discrimination, defamation, excessive force, false arrest, and false prosecution, and his right to adequate medical care while in custody (Count 4)
- All plaintiffs' claims for intentional infliction of emotional distress (Count 5)

3

- All plaintiffs' claims for negligent infliction of emotional distress (Count 6)
- Patrick's claim for wrongful detention (Count 7)
- Patrick's claim for negligence (Count 8)
- Patrick's claim for defamation (Count 9)

Mulder moves to dismiss each claim.

In their response, Plaintiffs concede that Patrick does not assert a constitutional claim for false arrest against Mulder. (DE 122, Response at 13.) Nor does the complaint allege that Mulder took any actions that caused Patrick's arrest. Accordingly, the Court will dismiss any claim against Mulder based on false arrest.

Plaintiffs do not address Mulder's argument that any claim against her based on excessive force should be dismissed. "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-CV-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2023 WL 8373001 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007). Moreover, Plaintiffs do not allege that Mulder used any force on Patrick at all. Accordingly, the Court will dismiss any claim against Mulder based on excessive force.

As to their KCRA claim, Plaintiffs address only Patrick's claim that Mulder violated his right to be free from disability discrimination under the KCRA and conspired to violate that right. Accordingly, the Court will dismiss any claim that Mulder violated Patrick's alleged rights under the KCRA to be free from defamation, excessive force, false arrest, and false prosecution and his right to adequate medical care while in custody. The Court will also dismiss any claim that Mulder conspired to violate these rights allegedly granted by the KCRA. Moreover,

4

Plaintiffs do not identify which provision of the KCRA grants Patrick these rights. Nor, as discussed more fully below, do Plaintiffs make allegations from which it can be inferred that any conspiracy existed to violate Patrick's rights under the KCRA or that Mulder entered into any such conspiracy.

That leaves Patrick's claims for conspiracy to violate and the violation of his constitutional rights to adequate medical care while in pretrial detention in violation of 42 U.S.C. § 1983 (Count 3); Patrick's claim for violation of and conspiracy to violate Patrick's rights under the KCRA to be free from disability discrimination (Count 4); all plaintiffs' claims for intentional infliction of emotional distress (Count 5); all plaintiffs' claims for negligent infliction of emotional distress (Count 6); Patrick's claim for wrongful detention (Count 7); Patrick's claim for negligence (Count 8); and Patrick's claim for defamation (Count 9)

The Court will address each of these claims below. Each claim is asserted against Mulder in both her official and individual capacities. (DE 82, Amended Complaint ¶33.)

## II. Analysis

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).

To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

In their response brief, Plaintiffs make additional allegations about Mulder that they do not allege in the complaint. They allege that Mulder is liable because she had "direct and supervisory responsibility . . . for all of this." (DE 122, Response at 9.) Plaintiffs asserted the same thing about co-defendant and jail employee Richard Mazzacone in response to his motion to dismiss. (DE 107, Response at 9.) But in their complaint, the Plaintiffs never allege that Mazzacone or Mulder had any supervisory duties over jail personnel. Nor do they assert any theory of supervisory liability against either defendant. They allege that only Jailer Jake Banta had the supervisory role at the jail. (DE 82, Amended Complaint ¶¶ 32, 80, 99, 116, 123.)

Plaintiffs also attach two affidavits to their response brief: one by Patrick's father and one by Plaintiffs' counsel. Along with the affidavits, Plaintiffs filed certain jail records and a video.

On this motion to dismiss, the Court will not consider the new allegations in the response or the statements made in the affidavits attached to the response. Nor will the Court consider the records or video filed with the affidavits. In determining whether a plaintiff has made sufficient

6

allegations to state a claim, the Court is limited to the allegations in the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, IncI.*, 108 F.3d 1546, 1554 (6th Cir.1997)).

The Court cannot consider new allegations in a response brief or affidavit. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020); *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their disparate impact claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings.")

## A. Constitutional Right to Adequate Medical Care

As to Patrick's claim under 42 U.S.C. §1983 for violation of his constitutional rights to adequate medical care while in custody, at the time of the relevant events, Patrick had not been adjudged guilty of any offense. He was being held in jail just after his arrest. Thus, his inadequate medical care claim arises under the Due Process Clause of the Fourteenth Amendment. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024).

A plaintiff must make sufficient allegations to support the following for an inadequate-medical-care claim under the Fourteenth Amendment: (1) that the plaintiff had a sufficiently serious medical need and (2) that each defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 315-16 (quoting *Brawner v. Scott Cnty., Tennessee*, 14

F.4th 585, 596 (6th Cir. 2021). This standard is "something akin to reckless disregard." *Brawner*, 14 F.4th at 596 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.")

Plaintiffs have named numerous defendants, including numerous employees of the Franklin County Jail. On this motion, however, the Court must focus on the allegations made against Mulder in particular. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Mulder does not dispute that Patrick has sufficiently alleged that he had an objectively serious medical need while in jail. She argues, however, that Patrick has not pleaded any facts from which it could be fairly inferred that she knew about Patrick's medical need or that she knew that Patrick faced a high risk of harm if she did not provide him with medical care or that she should have known that Patrick faced such a risk.

"A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 318 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024) (quoting *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020)).

8

Plaintiffs allege that jail employee Sarah Hill "briefed" Mulder about Patrick's condition. (DE 82, Amended Complaint, ¶ 54.) Plaintiffs also allege that Hill "performed the booking" and that, at booking, Patrick was in a wheelchair, "semi comatose, could not stand, and could not speak or understand what was going on." (DE 82, Amended Complaint ¶ 49.) Plaintiffs also allege that Mulder was aware that Patrick's father said Patrick was suffering from heat exhaustion. (DE 82, Amended Complaint ¶ 54.) It can be fairly inferred from these allegations that, at some point, Mulder learned that Patrick was "semi comatose" and unable to stand, speak, or comprehend and that he was reportedly suffering from heat exhaustion. These are at least sufficient allegations to state a claim that Patrick's need for medical care was so obvious that a layperson would have recognized it; that Mulder was aware of Patrick's condition; that she either knew that Patrick faced a high risk of excessive harm if he did not receive medical care or she should have known that; and that Mulder did not provide Patrick with medical care.

Mulder argues that the Court should find as a matter of law that she was entitled to rely on the judgment of medical professionals that Patrick did not require medical treatment. There are two problems with this argument. First, Patrick has at least sufficiently alleged that his need for medical care was obvious to even a layperson. *See, e.g., Ham v. Marshall Cnty., Ky*., No. 5:11-CV-11, 2012 WL 6675133, at *7 (W.D. Ky. Dec. 21, 2012) ("Rather, where Ham's continued symptoms would have made it obvious that [an inmate] required immediate medical attention, a jury could find that delaying such required treatment constitutes deliberate indifference."); *Valentour v. Noe*, No. CV 04-149-KSF, 2006 WL 8445420, at *4 (E.D. Ky. Sept. 8, 2006) ("Nor is this a case where the need for a specific form of medical treatment is obvious

9

to a lay person. Viewed objectively, Warden Morgan and Deputy Warden Kelsey justifiably relied on the care and treatment provided by the NTC medical staff.") Second, the Court cannot find on this motion to dismiss that Mulder relied on the judgment of medical professionals.

Accordingly, the Court cannot find as a matter of law that Mulder was entitled to rely on the judgment of medical professionals and did so.

A pretrial detainee's constitutional right to needed medical care was clearly established at the time of these events. *Est. of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005) ("[T]he Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established."). That right has been established since at least 1987. *Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (citing *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir.1992)).  Accordingly, the Court cannot find on this motion to dismiss that Mulder is entitled to qualified immunity on the deliberate indifference claim. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) ("At the pleading stage, [plaintiff's burden to defeat a qualified immunity claim] is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.")

For these reasons, the Court will not dismiss Patrick's claim against Mulder for violation of his constitutional right to adequate medical care.

### B.  Section 1983 Conspiracy Claim

As to Patrick's claim for a conspiracy to violate his rights under § 1983, he sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical

10

personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.)

Patrick alleges that the city of Frankfort and the police officers became involved in the plot because the officers were "smitten" with the nurses at the Medical Center and dependent on the nurses for their own medical care. (DE 82, Amended Complaint ¶ 56.) Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶¶ 56, 75, 77, 79, 85.) He does not allege, however, that Mulder or anyone employed by the jail agreed with any of the other defendants to violate any of Patrick's rights. Nor does he allege that Mulder agreed with other jail personnel to violate Patrick's rights.

For a § 1983 conspiracy, a plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of

specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted).

Patrick's allegations in support of his conspiracy claims are speculative at best. He alleges that the housekeeping staff was mad at his father for disciplining a staff member and so they plotted with the Medical Center staff to mistreat Patrick while he was in the emergency room. Plaintiffs never state who took part in the conversations between the housekeeping staff and the medical personnel, when they occurred, or precisely what was said. Nor do they explain why medical professionals were willing to violate their professional responsibilities as alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set forth sufficient facts from which the Court could infer that any agreement or single plan existed among the Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

Because the complaint does not sufficiently plead an agreement or single plan among the housekeeping staff and the medical personnel to mistreat Patrick, it does not sufficiently plead that Mulder became involved in any such conspiracy. Furthermore, even if the complaint did sufficiently allege an agreement or single plan among the Medical Center medical personnel and housekeeping staff, the complaint does not make any allegations to support that Mulder took part in any such agreement or joined in any single plan. Plaintiffs do not allege that Mulder had any communications with Medical Center employees or with employees of the Frankfort police department. Nor do Plaintiffs allege that Mulder had communications with any other jail personnel amounting to an agreement or single plan to mistreat Patrick.

12

Thus, the Court will dismiss Patrick's § 1983 conspiracy claim against Mulder for failure to state a claim.

### C. KCRA Claim for Disability Discrimination and Conspiracy

Plaintiffs allege that Mulder violated Patrick's right to be free from disability discrimination under the KCRA and that she conspired with the other defendants to violate that right. For these claims, Plaintiffs assert that Patrick's disability is "drug addiction." In their response, Plaintiffs argue that Mulder violated Patrick's right to be free from disability discrimination by jailing him because she "presumed he was a drug addict who had overdosed." (DE 122, Response at 21.)

These claims must be dismissed. First, individuals cannot be held liable under the KCRA unless they qualify as an employer. *Wathen v. Gen. Elec. Co*., 115 F.3d 400, 401, 405 (6th Cir. 1997). *See also Colter v. Bowling Green-Warren Cnty. Reg'l Airport Bd*., No. 1:17-CV-00118-JHM, 2017 WL 5490920, at *6 (W.D. Ky. Nov. 15, 2017) (quoting *Fugate v. Babcock & Wilcox Conversion Servs. LLC*, No. 5:14-CV-00172, 2015 WL 1758063, at * 5 (W.D. Ky. Apr. 17, 2015)).

Second, Plaintiffs do not allege in the complaint that Mulder booked Patrick or undertook any acts that caused his detention.

Third, Plaintiffs do not allege in their complaint that Mulder took any actions against Patrick because he has a drug addiction.

Fourth, as to Patrick's claim against Mulder for conspiring to violate his rights under the KCRA, this claim necessarily requires allegations that would support a reasonable inference of

13

some single plan or agreement among the defendants to violate the statute. *See Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co.*, 277 S.W. 3d 255, 261 (Ky. App. 2008) (discussing a civil conspiracy claim under Kentucky law). As discussed above, Plaintiffs do not sufficiently allege that any such single plan or agreement existed or that Mulder entered into any such plan or agreement.

### D. State Law Tort Claims

#### 1) Intentional and Negligent Infliction of Emotional Distress

All four plaintiffs assert state law claims for intentional and negligent infliction of emotional distress against Mulder.

To set forth a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege 1) intentional or reckless conduct by the wrongdoer; 2) conduct that is so outrageous and intolerable "that it offends against the generally accepted standards of decency and morality"; 3) "a causal connection between the wrongdoer's conduct and the emotional distress"; and 4) severe emotional distress. *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. App. 2001).

For a claim of negligent infliction of emotional distress (NIED), a plaintiff must allege that the defendant owed the plaintiff a duty of care; that the defendant breached that duty; injury to the plaintiff; and legal causation between the defendant's breach and the plaintiff's injury. *Osborne v. Keeny*, 399 S.W.3d 1, 17 (Ky. 2012). The plaintiff must allege a severe or serious emotional injury, meaning that "a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id*.

The IIED claim asserted by Hollon's parents and wife must be dismissed. For an IIED

14

claim, a plaintiff must allege that the wrongdoer "had the specific purpose of causing emotional distress" or "knew or should have known that emotional distress would likely result" from her conduct. *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012). Plaintiffs do not make any allegations from which it could be inferred that Mulder took any actions or that she failed to act with the intent to cause Patrick's father, mother, or wife emotional distress or that she knew or should have known that her actions or failures to act would cause them such distress. Plaintiffs do not even allege that Mulder knew of Patrick's mother or wife at all. As to Patrick's father, it can be inferred from the allegations in the complaint only that, at some point, Mulder was aware that Patrick's father said Patrick suffered from heat exhaustion. There are no allegations from which it can be inferred that Mulder took any actions or failed to act intending or knowing that Patrick's father would suffer emotional distress or that she was even aware of Patrick's father at the time she took any actions or failed to act.

As to Patrick's IIED claim, as discussed, Plaintiffs have sufficiently alleged that Patrick suffered a sufficiently serious medical need and that Mulder was aware of Patrick's need for medical care or should have been but failed to see that he received it. Patrick has also pleaded that he suffered severe emotional distress as a result. While additional facts would be needed for Patrick to prevail on an IIED claim against Mulder, the conduct alleged could plausibly constitute outrageous conduct and go "against the generally accepted standards of decency and morality."  Accordingly, the Court will not dismiss this claim. Moreover, again while additional facts would be necessary to prevail on this claim, Plaintiffs have sufficiently pleaded that Mulder should have known that Patrick would suffer emotional distress if he did not receive medical

care and that he did suffer emotional distress as a result.

As to the NIED claim by Patrick's father, mother, and wife, "[t]he case law is clear. Public officials owe the general public no duty of care unless the public official has some particular 'special relationship' with the injured party." *Hoffman v. Patterson*, 659 S.W.3d 839, 842 (Ky. Ct. App. 2021). For the special relationship to exist "the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred." *Id.* Plaintiffs do not allege that Patrick's parents or his wife were in custody at the time of the events in question. Accordingly, they fail to allege that Mulder had any duty to them.

Plaintiffs have made sufficient allegations, however, to support Patrick's NIED claim against Mulder. She owed a duty of care to jail detainees. *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky.). Plaintiffs have also at least sufficiently alleged that Mulder breached that duty and that Patrick suffered severe or serious emotional injury as a result.

Citing *Childers v. Geile*, 367 S.W.3d 576 (Ky. 2012), Mulder argues that Patrick's IIED and NIED claims should be dismissed because he pleaded other torts that permit recovery for emotional distress damages. In *Childers*, the court described an IIED claim as a "gap-filler" tort because it was aimed at allowing a cause of action for severe emotional distress caused by outrageous behavior where no other cause of action would allow for recovering such damages because the defendant did not suffer injury to his person or reputation. *Id*. at 581. Thus, the Court held that a plaintiff could not prevail on both an IIED claim and any other claim that allows for recovery of emotional distress damages where both claims are based on the same set of facts. *Id.*

The court explicitly recognized, however, that an IIED claim can be pleaded alternatively. *Id*. Thus, a plaintiff can plead both negligence and NIED, but he can recover only once for emotional distress damages caused by the same acts. *See O'Hara v. Laurel Cnty. Corr. Ctr*., No. 6:23-CV-026-CHB, 2023 WL 5729212, at *8 (E.D. Ky. Sept. 5, 2023).

### 2) Negligence

Patrick asserts a negligence claim against Mulder. To establish negligence, a plaintiff must show the defendant owed him a duty, the duty was breached, and there is a causal connection between the breach and the injury suffered. *Mullins v. Comm. Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). As discussed, Mulder owed a duty of care to jail detainees. *Sloas*, 201 S.W.3d at 479. For a jail employee to be liable for negligence for an injury suffered by a detainee, "the employee must either know or have reason to know that the prisoner is at risk of harm and fail to take reasonable care to prevent the prisoner from harm." *Jerauld ex rel. Robinson v. Kroger*, 353 S.W.3d 636, 640 (Ky. Ct. App. 2011).

As discussed, plaintiffs have alleged sufficient facts from which it could be fairly inferred that Mulder knew or had reason to know that Patrick faced a risk of harm because of his medical condition if he did not receive medical care. Accordingly, the Court will not dismiss Mulder's negligence claim against Mulder.

### 3) Wrongful Detention

The facts set forth in the complaint to support Patrick's wrongful detention claim against Mulder all deal with the jail personnel's alleged failure to provide adequate medical care to Patrick while he was incarcerated. (DE 82, Amended Complaint ¶104-05.) A wrongful detention

claim, however, is not based on the failure to provide medical care to a detainee while in jail. Instead, it is based on the detention of an individual without probable cause, which "can happen when the police hold someone without any reason before the formal onset of a criminal proceeding" or "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Plaintiffs do not allege that Mulder took any actions that caused or wrongfully prolonged Patrick's detention. Accordingly, the Court will dismiss any claim against Mulder based on wrongful detention.

### 4) Defamation

To assert a defamation claim, plaintiff must allege that defendant made a "false and defamatory statement." *Tolder v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014). Plaintiffs do not allege in the complaint that Mulder made any such statements. In their response to the motion to dismiss, they assert that Mulder made false and defamatory statements the in the jail intake forms. (DE 122, Response at 2.) The Court cannot consider these assertions in determining whether Patrick has sufficiently alleged a defamation claim. Instead, the Court is limited to the allegations in the complaint. Patrick's defamation claim against Mulder will be dismissed.

### 5) Qualified official immunity

Mulder argues that she is entitled to qualified official immunity from Patrick's state law claims. Public officers and employees sued in their individual capacities are entitled to "qualified official immunity" when their acts were (1) discretionary (2) made in good faith, and (3) within

18

the scope of the employee's authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Qualified official immunity extends to intentional torts and negligence claims. *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 253 (6th Cir. 2019) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016)). Conversely, no immunity is afforded for the performance of a ministerial act. *Yanero*, 65 S.W. 3rd at 522.

"Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was in bad faith]." *Id*. at 523.

Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id*. at 522.

Plaintiffs allege that Mulder was made aware of Patrick's condition but failed to provide medical care. Plaintiffs do not dispute that Mulder's actions or failures to act were discretionary. Further, a jailer's decision to not provide a detainee with medical care requires judgment as to whether the detainee needs medical care and is, thus, discretionary. *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 681 (E.D. Ky. 2002); *Williams v. Kenton Cnty., KY*, No. 2: 21-80-WOB-CJS, 2023 WL 2053068, at *15 (E.D. Ky. Feb. 16, 2023), *appeal dismissed sub nom. Williams v. Kenton Cnty., Kentucky*, No. 23-5206, 2023 WL 8717231 (6th Cir. Dec. 18, 2023).

As to whether Plaintiff has made sufficient allegations that Mulder acted in bad faith when she failed to provide medical care to Patrick, "'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . .

or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

"Cases are indeed rare where one admits an improper motive." S*loas*, 201 S.W.3d at 481. Thus, most often bad faith is established with "proof of a violation of a 'clearly established right' of the plaintiff, which 'a person in the public employee's position presumptively would have known was afforded to a person in the defendant's position.'" *Id*. (quoting *Yanero*, 65 S.W.3d at 523.)

On a motion to dismiss, the Court looks to the allegations of the complaint, not proof. As discussed, Patrick has sufficiently alleged that Mulder violated his constitutional right to adequate medical care while detained in jail, a right that was "clearly established" at the time. Accordingly, the Court cannot find on this motion to dismiss that Mulder is entitled to qualified official immunity from Patrick's state law tort claims.

### E. Official Capacity Claims

Plaintiffs assert their federal constitutional and state law claims against Mulder in both her official and individual capacities. The Court will dismiss the official capacity claims as redundant. This is because "[a] suit against an individual 'in his official capacity'" is "essentially a suit directly against the local government unit." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989). A § 1983 action "normally should be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of that public official." *Id*. at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the

20

entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring official-capacity actions against local government officials. . . . " *Id*. at 167 n. 14. Likewise, the plaintiffs' state-law claims against Mulder in her official capacity are essentially claims against the county. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky.2001). Accordingly, the state-law claims asserted against Mulder in her official capacity will be dismissed.

### III. Conclusion

For all these reasons, the Court hereby ORDERS that Mulder's motion to dismiss (DE 112) is GRANTED in part and DENIED in part as follows:

1) All claims asserted against Mulder in her official capacity are DISMISSED;

2) The following claims asserted against Mulder in her individual capacity are

   DISMISSED:

   - Patrick's claim for conspiracy to violate his constitutional rights against excessive force and false arrest and his right to adequate medical care while in pretrial detention, all in violation of 42 U.S.C. § 1983;
   - Patrick's claim for violation of his constitutional rights against excessive force and false arrest;
   - Patrick's claim for violation of and conspiracy to violate his rights under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq*. to be free from disability discrimination, defamation, excessive force, false arrest, and false prosecution, and his right to adequate medical care while in custody (Count 4)
   - The claims for intentional infliction of emotional distress filed by Patrick's father, mother, and wife;
   - The claims for negligent infliction of emotional distress filed by Patrick's father, mother, and wife
   - Patrick's claim for wrongful detention
   - Patrick's claim for defamation

3) As a result of this opinion, the sole remaining claims against Mulder in her individual

   capacity are the following:

21

- Patrick's claim for violation of his constitutional rights to adequate medical care while a pretrial detainee;
- Patrick's claim for negligence; and
- Patrick's claims for intentional and negligent infliction of emotional distress.

This 18th day of July, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

22