**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

PATRICK J. HOLLON, *et al.*                          CIVIL ACTION NO. 3:22-CV-52-KKC

      **Plaintiffs,**

V.                                                                    **OPINION AND ORDER**

HCA HEALTCHARE, INC., *et al.*

      **Defendants.**

*** *** ***

This matter is before the Court on a motion to dismiss (DE 119) Plaintiffs' Second

Amended Complaint filed by defendant Robert Kelty.

**I.  Allegations**

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16,

2022, he became extremely ill while working the night shift at his job at Audia International, Inc.

in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.)  It was 93 degrees at Patrick's workplace, and

he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers

packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on

June 16, 2022. (DE 82, Complaint, ¶ 39.) Plaintiffs allege that the EMTs told the Medical Center

staff that Patrick was suffering from heatstroke. The Medical Center staff nevertheless

misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.)

According to Plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 82, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) Plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) Plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heatstroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022, but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now Plaintiffs' Second Amended Complaint. It asserts claims against five  groups of defendants: 1) the Medical Center, certain of its officers and directors, and certain employees of the Medical Center or individuals who work there; 2) HCA Healthcare, Inc. (which Plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain  Frankfort

Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which Plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

Various of these defendants have moved to dismiss the claims against them. Currently before the Court is the motion by Robert Kelty, who is identified in the Second Amended Complaint as an employee of the Franklin County Jail. (DE 82, Amended Complaint ¶33.)

The Second Amended Complaint contains the following allegations about Kelty:

   1)  he helped perform the "intake" of Patrick at the jail and brought him to booking (DE 82, Amended Complaint ¶ 49);
   2)  he helped Patrick change into a jail uniform because Patrick was unable to change on his own (DE 82, Amended Complaint ¶ 49); and
   3)  he was "involved" when Patrick was in an altercation with another detainee in his cell. (DE 82, Amended Complaint ¶ 51.)

As to the claims that Plaintiffs assert against Kelty, the Court construes the complaint to assert the following:

- Patrick's claim for conspiracy to violate and the violation of his constitutional rights against excessive force and false arrest and his right to adequate medical care while in pretrial detention, all in violation of 42 U.S.C. § 1983 (Count 3)
- Patrick's claim for violation of and conspiracy to violate Patrick's rights under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq.* to be free from disability discrimination, defamation, excessive force, false arrest, and false prosecution, and his right to adequate medical care while in custody (Count 4)
- All plaintiffs' claims for intentional infliction of emotional distress (Count 5)
- All plaintiffs' claims for negligent infliction of emotional distress (Count 6)
- Patrick's claim for wrongful detention (Count 7)
- Patrick's claim for negligence (Count 8)
- Patrick's claim for defamation (Count 9)

Kelty moves to dismiss each claim.

In their response, Plaintiffs concede that Patrick does not assert a constitutional claim for false arrest against Kelty. (DE 127, Response at 13.) Nor does the complaint allege that Kelty took any actions that caused Patrick's arrest. Accordingly, the Court will dismiss any claim against Kelty based on false arrest.

Plaintiffs do not address Kelty's argument that any claim against him based on excessive force should be dismissed. "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-CV-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2023 WL 8373001 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007). Moreover, Plaintiffs do not allege that Kelty used any force on Patrick at all. Accordingly, the Court will dismiss any claim against Kelty based on excessive force.

As to their KCRA claim, Plaintiffs address only Patrick's claim that Kelty violated his right to be free from disability discrimination under the KCRA and conspired to violate that right. Accordingly, the Court will dismiss any claim that Kelty violated Patrick's alleged rights under the KCRA to be free from defamation, excessive force, false arrest, and false prosecution and his right to adequate medical care while in custody. The Court will also dismiss any claim that Kelty conspired to violate these rights allegedly granted by the KCRA. Moreover, Plaintiffs do not identify which provision of the KCRA grants Patrick these rights. Nor, as discussed more fully below, do Plaintiffs make allegations from which it can be inferred that any conspiracy

4

existed to violate Patrick's rights under the KCRA or that Kelty entered into any such conspiracy.

That leaves Patrick's claims for conspiracy to violate and the violation of his constitutional rights to adequate medical care while in pretrial detention in violation of 42 U.S.C. § 1983 (Count 3); Patrick's claim for violation of and conspiracy to violate Patrick's rights under the KCRA to be free from disability discrimination (Count 4); all plaintiffs' claims for intentional infliction of emotional distress (Count 5); all plaintiffs' claims for negligent infliction of emotional distress (Count 6); Patrick's claim for wrongful detention (Count 7); Patrick's claim for negligence (Count 8); and Patrick's claim for defamation (Count 9)

The Court will address each of these claims below. Each claim is asserted against Kelty in both his official and individual capacities. (DE 82, Amended Complaint ¶33.)

## II. Analysis

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).

To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

In their response brief, Plaintiffs make additional allegations about Kelty that they do not allege in the complaint. Like they did in their responses to the motions to dismiss by jail employees Richard Mazzacone and Ashley Mulder, the Plaintiffs allege in their response to Kelty's motion that he had supervisory authority over jail personnel. (DE 127, Response at 2, 9, 12, 13-14, 21, 22.) But in their complaint, the Plaintiffs never allege that Kelty, Mazzacone or Mulder had any supervisory duties over jail personnel. Nor do they assert any theory of supervisory liability against these defendants. They allege that only Jailer Jake Banta had the supervisory role at the jail. (DE 82, Amended Complaint ¶¶ 32, 80, 99, 116, 123.)

Plaintiffs also attach two affidavits to their response brief: one by Patrick's father and one by Plaintiffs' counsel. Along with the affidavits, Plaintiffs filed certain jail records and a video.

On this motion to dismiss, the Court will not consider the new allegations in the response or the statements made in the affidavits attached to the response. Nor will the Court consider the jail records or video filed with the affidavits. In determining whether a plaintiff has made sufficient allegations to state a claim, the Court is limited to the allegations in the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached

to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, IncI.*, 108 F.3d 1546, 1554 (6th Cir.1997)).

The Court cannot consider new allegations in a response brief or affidavit. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020); *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their disparate impact claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings.")

## A.  Constitutional Right to Adequate Medical Care

As to Patrick's claim under 42 U.S.C. §1983 for violation of his constitutional rights to adequate medical care while in custody, at the time of the relevant events, Patrick had not been adjudged guilty of any offense. He was being held in jail just after his arrest. Thus, his inadequate medical care claim arises under the Due Process Clause of the Fourteenth Amendment. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024).

A plaintiff must make sufficient allegations to support the following for an inadequate-medical-care claim under the Fourteenth Amendment: (1) that the plaintiff had a sufficiently serious medical need and (2) that each defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id*. at 315-16 (quoting *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 596 (6th Cir. 2021). This standard is "something akin to reckless disregard." *Brawner*, 14 F.4th at 596 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to

7

act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.")

Plaintiffs have named numerous defendants, including numerous employees of the Franklin County Jail. On this motion, however, the Court must focus on the allegations made against Kelty in particular. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Kelty does not dispute that Patrick has sufficiently alleged that he had an objectively serious medical need while in jail. "A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 318 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024) (quoting *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020)).

Plaintiffs allege that Kelty met Patrick at the jail intake, helped him change into a jail uniform because Patrick was unable to do so on his own, and took him to booking. (DE 82, Amended Complaint, ¶ 49.) Plaintiffs also allege that, at booking, Patrick was in a wheelchair, "semi comatose, could not stand, and could not speak or understand what was going on." (DE 82, Amended Complaint ¶ 49.) It can be fairly inferred from these allegations that Kelty was aware when Patrick was booked that he was "semi comatose" and unable to stand, speak, or

comprehend. These are at least sufficient allegations to state a claim that Patrick's need for medical care was so obvious that a layperson would have recognized it; that Kelty was aware of Patrick's condition; that he either knew that Patrick faced a high risk of excessive harm if he did not receive medical care or that he should have known that; and that Kelty did not provide Patrick with medical care.

Kelty argues that the complaint does not allege that the delay between Patrick being booked and his eventual receipt of medical care worsened his condition. Plaintiffs allege, however, that Patrick was "deprived of competent medical care while in pretrial detention" by jail personnel "such that his condition worsened and became life-threatening. . . ." (DE 82, Amended Complaint ¶ 79.) Plaintiffs allege, "Patrick remained in [jail] for approximately 12 hours until he was released on his own recognizance. During his time in jail, Patrick's condition worsened as he remained untreated by [jail personnel] for heat stroke and did not receive any medical care." (DE 82, Amended Complaint ¶ 46.) To the extent that Patrick must allege the delay in treatment between booking and his receipt of medical care worsened his condition, he has done so.

Kelty also asks the Court to find as a matter of law that he was entitled to rely on the judgment of medical professionals that Patrick did not require medical treatment. There are two problems with this argument. First, Patrick has at least sufficiently alleged that his need for medical care was obvious to even a layperson. *See, e.g., Ham v. Marshall Cnty., Ky.*, No. 5:11-CV-11, 2012 WL 6675133, at *7 (W.D. Ky. Dec. 21, 2012) ("Rather, where Ham's continued symptoms would have made it obvious that [an inmate] required immediate medical attention, a

9

jury could find that delaying such required treatment constitutes deliberate indifference."); *Valentour v. Noe*, No. CV 04-149-KSF, 2006 WL 8445420, at *4 (E.D. Ky. Sept. 8, 2006) ("Nor is this a case where the need for a specific form of medical treatment is obvious to a lay person. Viewed objectively, Warden Morgan and Deputy Warden Kelsey justifiably relied on the care and treatment provided by the NTC medical staff.") Second, the Court cannot find on this motion to dismiss that Kelty relied on the judgment of medical professionals.

Accordingly, the Court cannot find as a matter of law that Kelty was entitled to rely on the judgment of medical professionals and did so.

A pretrial detainee's constitutional right to needed medical care was clearly established at the time of these events. *Est. of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005) ("[T]he Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established."). That right has been established since at least 1987. *Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005) (citing *Heflin v. Stewart County*, 958 F.2d 709, 717 (6th Cir.1992)). Accordingly, the Court cannot find on this motion to dismiss that Kelty is entitled to qualified immunity on the deliberate indifference claim. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) ("At the pleading stage, [plaintiff's burden to defeat a qualified immunity claim] is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.")

For these reasons, the Court will not dismiss Patrick's claim against Kelty for violation of his constitutional right to adequate medical care.

10

### B.  Section 1983 Conspiracy Claim

As to Patrick's claim for a conspiracy to violate his rights under § 1983, he sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.)

Patrick alleges that the city of Frankfort and the police officers became involved in the plot because the officers were "smitten" with the nurses at the Medical Center and dependent on the nurses for their own medical care. (DE 82, Amended Complaint ¶ 56.) Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶¶  56, 75, 77, 79, 85.) He does not allege, however, that Kelty or anyone employed by the jail agreed with any of the other defendants to violate any of Patrick's rights. Nor does he allege that Kelty agreed with other jail personnel to violate Patrick's rights.

For a § 1983 conspiracy, a plaintiff "must plead enough facts to support a reasonable

inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted).

Patrick's allegations in support of his conspiracy claims are speculative at best. He alleges that the housekeeping staff was mad at his father for disciplining a staff member and so they plotted with the Medical Center staff to mistreat Patrick while he was in the emergency room. Plaintiffs never state who took part in the conversations between the housekeeping staff and the medical personnel, when they occurred, or precisely what was said. Nor do they explain why medical professionals were willing to violate their professional responsibilities as alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set forth sufficient facts from which the Court could infer that any agreement or single plan existed among the Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

Because the complaint does not sufficiently plead an agreement or single plan among the housekeeping staff and the medical personnel to mistreat Patrick, it does not sufficiently plead that Kelty became involved in any such conspiracy. Furthermore, even if the complaint did sufficiently allege an agreement or single plan among the Medical Center medical personnel and housekeeping staff, the complaint does not make any allegations to support that Kelty took part

12

in any such agreement or joined in any single plan. Plaintiffs do not allege that Kelty had any communications with Medical Center employees or with employees of the Frankfort police department. Nor do Plaintiffs allege that Kelty had communications with any other jail personnel amounting to an agreement or single plan to mistreat Patrick.

Thus, the Court will dismiss Patrick's § 1983 conspiracy claim against Kelty for failure to state a claim.

### C.  KCRA Claim for Disability Discrimination and Conspiracy

Plaintiffs allege that Kelty violated Patrick's right to be free from disability discrimination under the KCRA and that he conspired with the other defendants to violate that right. For these claims, Plaintiffs assert that Patrick's disability is "drug addiction." In their response, Plaintiffs argue that Kelty violated Patrick's right to be free from disability discrimination by jailing him because Kelty "presumed he was a drug addict who had overdosed." (DE 127, Response at 23.)

These claims must be dismissed because individuals cannot be held liable under the KCRA unless they qualify as an employer. *Wathen v. Gen. Elec. Co*., 115 F.3d 400, 401, 405 (6th Cir. 1997). *See also Colter v. Bowling Green-Warren Cnty. Reg'l Airport Bd*., No. 1:17-CV-00118-JHM, 2017 WL 5490920, at *6 (W.D. Ky. Nov. 15, 2017) (quoting *Fugate v. Babcock & Wilcox Conversion Servs. LLC*, No. 5:14-CV-00172, 2015 WL 1758063, at * 5 (W.D. Ky. Apr. 17, 2015)).

Moreover, Plaintiffs do not allege in their complaint that Kelty took any actions against Patrick because he has a drug addiction.

13

As to Patrick's claim against Kelty for conspiring to violate his rights under the KCRA, this claim necessarily requires allegations that would support a reasonable inference of some single plan or agreement among the defendants to violate the statute. *See Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co.*, 277 S.W. 3d 255, 261 (Ky. App. 2008) (discussing a civil conspiracy claim under Kentucky law). As discussed above, Plaintiffs do not sufficiently allege that any such single plan or agreement existed or that Kelty entered into any such plan or agreement.

### D.  State Law Tort Claims

### 1)  Intentional and Negligent Infliction of Emotional Distress

All four plaintiffs assert state law claims for intentional and negligent infliction of emotional distress against Kelty.

To set forth a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege 1) intentional or reckless conduct by the wrongdoer; 2) conduct that is so outrageous and intolerable "that it offends against the generally accepted standards of decency and morality"; 3) "a causal connection between the wrongdoer's conduct and the emotional distress"; and 4) severe emotional distress. *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. App. 2001).

For a claim of negligent infliction of emotional distress (NIED), a plaintiff must allege that the defendant owed the plaintiff a duty of care; that the defendant breached that duty; injury to the plaintiff; and legal causation between the defendant's breach and the plaintiff's injury. *Osborne v. Keeny*, 399 S.W.3d 1, 17 (Ky. 2012). The plaintiff must allege a severe or serious emotional injury, meaning that "a reasonable person, normally constituted, would not be

14

expected to endure the mental stress engendered by the circumstances of the case." *Id*.

The IIED claim asserted by Patrick's parents and wife must be dismissed. For an IIED claim, a plaintiff must allege that the wrongdoer "had the specific purpose of causing emotional distress" or "knew or should have known that emotional distress would likely result" from his conduct. *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012). Plaintiffs do not make any allegations from which it could be inferred that Kelty took any actions or that he failed to act with the intent to cause Patrick's father, mother, or wife emotional distress or that he knew or should have known that his actions or failures to act would cause them such distress. Plaintiffs do not allege that Kelty knew of Patrick's parents or wife at all.

As to Patrick's IIED claim, as discussed, Plaintiffs have sufficiently alleged that Patrick suffered a sufficiently serious medical need and that Kelty was aware of Patrick's need for medical care or should have been but failed to see that he received it. Patrick has also pleaded that he suffered severe emotional distress as a result. While additional facts would be needed for Patrick to prevail on an IIED claim against Kelty, the conduct alleged could plausibly constitute outrageous conduct and go "against the generally accepted standards of decency and morality." Moreover, again while additional facts would be necessary to prevail on this claim, Plaintiffs have sufficiently pleaded that Kelty should have known that Patrick would suffer emotional distress if he did not receive medical care and that he did suffer emotional distress as a result.

As to the NIED claim by Patrick's father, mother, and wife, "[t]he case law is clear. Public officials owe the general public no duty of care unless the public official has some particular 'special relationship' with the injured party." *Hoffman v. Patterson*, 659 S.W.3d 839,

15

842 (Ky. Ct. App. 2021). For the special relationship to exist "the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred." *Id.* Plaintiffs do not allege that Patrick's parents or his wife were in custody at the time of the events in question. Accordingly, they fail to allege that Kelty had any duty to them.

Plaintiffs have made sufficient allegations, however, to support Patrick's NIED claim against Kelty. He owed a duty of care to jail detainees. *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky.). Plaintiffs have also at least sufficiently alleged that Kelty breached that duty and that Patrick suffered severe or serious emotional injury as a result.

Citing *Childers v. Geile*, 367 S.W.3d 576 (Ky. 2012), Kelty argues that Patrick's IIED and NIED claims should be dismissed because he pleaded other torts that permit recovery for emotional distress damages. In *Childers*, the court described an IIED claim as a "gap-filler" tort because it was aimed at allowing a cause of action for severe emotional distress caused by outrageous behavior where no other cause of action would allow for recovering such damages because the defendant did not suffer injury to his person or reputation. *Id.* at 581. Thus, the Court held that a plaintiff could not prevail on both an IIED claim and any other claim that allows for recovery of emotional distress damages where both claims are based on the same set of facts. *Id.* The court explicitly recognized, however, that an IIED claim can be pleaded alternatively. *Id.* Thus, a plaintiff can plead both negligence and NIED, but he can recover only once for emotional distress damages caused by the same acts. *See O'Hara v. Laurel Cnty. Corr. Ctr.*, No. 6:23-CV-026-CHB, 2023 WL 5729212, at *8 (E.D. Ky. Sept. 5, 2023).

16

### 2) Negligence

Patrick asserts a negligence claim against Kelty. To establish negligence, a plaintiff must show the defendant owed him a duty, the duty was breached, and there is a causal connection between the breach and the injury suffered. *Mullins v. Comm. Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). As discussed, Kelty owed a duty of care to jail detainees. *Sloas*, 201 S.W.3d at 479. For a jail employee to be liable for negligence for an injury suffered by a detainee, "the employee must either know or have reason to know that the prisoner is at risk of harm and fail to take reasonable care to prevent the prisoner from harm." *Jerauld ex rel. Robinson v. Kroger*, 353 S.W.3d 636, 640 (Ky. Ct. App. 2011).

As discussed, plaintiffs have alleged sufficient facts from which it could be fairly inferred that Kelty knew or had reason to know that Patrick faced a risk of harm because of his medical condition if he did not receive medical care. Accordingly, the Court will not dismiss Kelty's negligence claim against Kelty.

### 3) Wrongful Detention

The facts set forth in the complaint to support Patrick's wrongful detention claim against Kelty all deal with the jail personnel's alleged failure to provide adequate medical care to Patrick while he was incarcerated. (DE 82, Amended Complaint ¶104-05.) In response to Kelty's motion to dismiss, Plaintiffs state that Kelty is liable for wrongful detention "primarily through the refusal to provide necessary medical care." (DE 127, Response at 14.) A wrongful detention claim, however, is not based on the failure to provide medical care to a detainee while in jail. Instead, it is based on the detention of an individual without probable cause, which "can happen

when the police hold someone without any reason before the formal onset of a criminal proceeding" or "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Plaintiffs do not allege that Kelty took any actions that caused or wrongfully prolonged Patrick's detention. Accordingly, the Court will dismiss any claim against Kelty based on wrongful detention.

### 4) Defamation

To assert a defamation claim, plaintiff must allege that defendant made a "false and defamatory statement." *Tolder v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014). Plaintiffs do not allege in the complaint that Kelty made any such statements. In their response to the motion to dismiss, Plaintiffs do not dispute that Kelty made no defamatory statements himself. They appear to argue that Kelty is liable as a co-conspirator and as a supervisor for statements made by other jail personnel. (DE 122, Response at 21-22.) For the reasons discussed, however, Plaintiffs have failed to sufficiently allege either a conspiracy or that Kelty was a jail supervisor. Patrick's defamation claim against Kelty will be dismissed.

### 5) Qualified official immunity

Kelty argues that he is entitled to qualified official immunity from Patrick's state law claims. Public officers and employees sued in their individual capacities are entitled to "qualified official immunity" when their acts were (1) discretionary (2) made in good faith, and (3) within the scope of the employee's authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Qualified

18

official immunity extends to intentional torts and negligence claims. *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 253 (6th Cir. 2019) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016)). Conversely, no immunity is afforded for the performance of a ministerial act. *Yanero*, 65 S.W. 3rd at 522.

"Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was in bad faith]." *Id*. at 523.

Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id*. at 522.

Plaintiffs allege that Kelty was aware of Patrick's condition but failed to provide medical care. Plaintiffs do not dispute that Kelty's actions or failures to act were discretionary. Further, a jailer's decision to not provide a detainee with medical care requires judgment as to whether the detainee needs medical care and is, thus, discretionary. *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 681 (E.D. Ky. 2002); *Williams v. Kenton Cnty., KY*, No. 2: 21-80-WOB-CJS, 2023 WL 2053068, at *15 (E.D. Ky. Feb. 16, 2023), *appeal dismissed sub nom. Williams v. Kenton Cnty., Kentucky*, No. 23-5206, 2023 WL 8717231 (6th Cir. Dec. 18, 2023).

As to whether Plaintiff has made sufficient allegations that Kelty acted in bad faith when he failed to provide medical care to Patrick, "'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . .

19

or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

"Cases are indeed rare where one admits an improper motive." S*loas*, 201 S.W.3d at 481. Thus, most often bad faith is established with "proof of a violation of a 'clearly established right' of the plaintiff, which 'a person in the public employee's position presumptively would have known was afforded to a person in the defendant's position.'" *Id*. (quoting *Yanero*, 65 S.W.3d at 523.)

On a motion to dismiss, the Court looks to the allegations of the complaint, not proof. As discussed, Patrick has sufficiently alleged that Kelty violated his constitutional right to adequate medical care while detained in jail, a right that was "clearly established" at the time. Accordingly, the Court cannot find on this motion to dismiss that Kelty is entitled to qualified official immunity from Patrick's state law tort claims.

### E. Official Capacity Claims

Plaintiffs assert their federal constitutional and state law claims against Kelty in both his official and individual capacities. The Court will dismiss the official capacity claims as redundant. This is because "[a] suit against an individual 'in his official capacity'" is "essentially a suit directly against the local government unit." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989). A § 1983 action "normally should be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of that public official." *Id*. at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the

entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring official-capacity actions against local government officials. . . . " *Id*. at 167 n. 14. Likewise, the plaintiffs' state-law claims against Kelty in his official capacity are essentially claims against the county. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky.2001). Accordingly, the state-law claims asserted against Kelty in his official capacity will be dismissed.

### III. Conclusion

For all these reasons, the Court hereby ORDERS that Kelty's motion to dismiss (DE 119) is GRANTED in part and DENIED in part as follows:

1)  All claims asserted against Kelty in his official capacity are DISMISSED;

2)  The following claims asserted against Kelty in his individual capacity are DISMISSED:

    - Patrick's claim for conspiracy to violate his constitutional rights against excessive force and false arrest and his right to adequate medical care while in pretrial detention, all in violation of 42 U.S.C. § 1983;
    - Patrick's claim for violation of his constitutional rights against excessive force and false arrest;
    - Patrick's claim for violation of and conspiracy to violate his rights under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq*. to be free from disability discrimination, defamation, excessive force, false arrest, and false prosecution, and his right to adequate medical care while in custody (Count 4)
    - The claims for intentional infliction of emotional distress filed by Patrick's father, mother, and wife;
    - The claims for negligent infliction of emotional distress filed by Patrick's father, mother, and wife
    - Patrick's claim for wrongful detention
    - Patrick's claim for defamation.

3)  As a result of this opinion, the sole remaining claims against Kelty in his individual capacity are the following:

    - Patrick's claim for violation of his constitutional right to adequate medical care while a pretrial detainee;

21

- Patrick's claim for negligence; and
- Patrick's claims for intentional and negligent infliction of emotional distress.

This 18th day of July, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY