## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## FRANKFORT

| | |
|---|---|
| **PATRICK J. HOLLON,** *et al.* | **CIVIL ACTION NO. 3:22-CV-52-KKC** |
| **Plaintiffs,** | |
| **V.** | **OPINION AND ORDER** |
| **HCA HEALTHCARE, INC.,** *et al.* | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion to dismiss (DE 130) Plaintiffs' Second

Amended Complaint filed by defendant Franklin County Jailer Jacob ("Jake") Banta.

### I. Allegations

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16,

2022, he became extremely ill while working the night shift at his job at Audia International, Inc.

in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.)  It was 93 degrees at Patrick's workplace, and

he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers

packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on

June 16, 2022. (DE 82, Complaint, ¶ 39.) Plaintiffs allege that the EMTs told the Medical Center

staff that Patrick was suffering from heatstroke. The Medical Center staff nevertheless

misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.)

According to Plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 82, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) Plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) Plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heatstroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022, but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now Plaintiffs' Second Amended Complaint. It asserts claims against five  groups of defendants: 1) the Medical Center, certain of its officers and directors, and certain employees of the Medical Center or individuals who work there; 2) HCA Healthcare, Inc. (which Plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain  Frankfort

Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which Plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

Various of these defendants have moved to dismiss the claims against them. Currently before the Court is the motion by Jake Banta, who is identified in the Second Amended Complaint as the Franklin County Jailer. (DE 82, Amended Complaint ¶ 32.)

The Second Amended Complaint contains the following allegations about Banta:

1) He is responsible for training and supervising employees of the Franklin County Jail. (DE 82, Amended Complaint ¶ 32.)
2) He is responsible for establishing and implementing customs, practices, and policy for the Franklin County Jail. (DE 82, Amended Complaint ¶ 32.)
3) Banta was not present at the jail when Patrick was booked. At 3:47 p.m. that day, Banta called the jail, and employee Ashley Mulder told Banta that jail employee Sarah Hill had briefed her about Patrick. (DE 82, Amended Complaint ¶ 54.)
4) At some point after that call, Banta arrived at the jail and Mulder advised him that Patrick's father said Patrick "got heat exhaustion at work." Mulder also advised Banta that Patrick's father was trying to get him released. (DE 82, Amended Complaint ¶ 54.)
5) Banta and a jail employee helped Patrick get dressed, and they escorted him to Patrick's father. (DE 82, Amended Complaint ¶ 54.)
6) Banta called a local judge to arrange for Patrick's release. At this point Patrick was "still semi comatose" and "could not speak or sit up," "follow instructions or understand or sign any forms." (DE 82, Amended Complaint ¶ 54.)
7) Banta and Patrick's father held Patrick up for the release hearing. (DE 82, Amended Complaint ¶ 54.)

3

As to the claims that Plaintiffs assert against Banta, the Court construes the complaint to assert the following:

- Patrick's claim for conspiracy to violate and the violation of his constitutional rights against excessive force and false arrest and his right to adequate medical care while in pretrial detention, all in violation of 42 U.S.C. § 1983 (Count 3)
- Patrick's claim for violation of and conspiracy to violate Patrick's rights under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010, *et seq*. to be free from disability discrimination, defamation, excessive force, false arrest, and false prosecution, and his right to adequate medical care while in custody (Count 4)
- All plaintiffs' claims for intentional infliction of emotional distress (Count 5)
- All plaintiffs' claims for negligent infliction of emotional distress (Count 6)
- Patrick's claim for wrongful detention (Count 7)
- Patrick's claim for negligence (Count 8)
- Patrick's claim for defamation (Count 9)

Banta moves to dismiss each claim.

## II. Analysis

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)). Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations omitted).

4

To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

In their response brief, Plaintiffs refer to exhibits attached to their responses to motions to dismiss filed by other defendants. On this motion to dismiss, the Court will not consider these exhibits, which were not attached to the complaint. In determining whether a plaintiff has made sufficient allegations to state a claim, the Court is limited to the allegations in the complaint, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, IncI.*, 108 F.3d 1546, 1554 (6th Cir.1997)).

## A. Official Capacity Claims

Plaintiffs assert their federal constitutional and state law claims against Banta in both his official and individual capacities. The Court will dismiss the official capacity claims as redundant. This is because "[a] suit against an individual 'in his official capacity'" is "essentially a suit directly against the local government unit." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989). A § 1983 action "normally should be brought against either or both of two defendants: the local public official in his individual capacity and the local government which employs or is sought to be held responsible for the acts of that public official." *Id*. at 1244-45. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "There is no longer a need to bring

official-capacity actions against local government officials. . . . " *Id.* at 167 n. 14. Likewise, the plaintiffs' state-law claims against Banta in his official capacity are essentially claims against the county. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky.2001). Accordingly, all the official capacity against Banta will be dismissed.

### B.  Section 1983 Constitutional Claims against Banta in his Individual Capacity

In their response to the motion to dismiss, Plaintiffs do not address Banta's argument that any constitutional claim against him for excessive force or false arrest should be dismissed. "Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them." *Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-CV-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022), *aff'd*, No. 23-3269, 2023 WL 8373001 (6th Cir. Dec. 4, 2023); *see also Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007).

Moreover, Plaintiffs do not allege in their complaint that Banta was present for Patrick's arrest, encouraged the arrest, or implicitly approved of it. In fact, they does not allege that Banta had anything to do with Patrick's arrest or that he knew anything about the arrest until well after the arrest occurred. Plaintiffs do not allege that, as jailer, Banta had any authority regarding Patrick's arrest at all.

Likewise, Plaintiffs do not allege that Banta directly participated in the decision to detain Patrick, encouraged that decision, or even was aware of Patrick's detention until 3:47 p.m. on the day Patrick was arrested and detained, which was hours after Patrick's arrest and his booking at the jail. The same is true of the alleged use of excessive force by jail personnel. Patrick does not

allege that Banta directly participated in it, encouraged that conduct, or was ever even aware of any such conduct prior to this lawsuit.

Accordingly, any claim against Banta for violation of Patrick's constitutional rights against false arrest or excessive force must be dismissed.

As to the jail personnel's alleged failure to provide Patrick with adequate medical care, Patrick had not been adjudged guilty of any offense at the time of the relevant events. He was being held in jail just after his arrest. Thus, his inadequate medical care claim arises under the Due Process Clause of the Fourteenth Amendment. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024).

A plaintiff must make sufficient allegations to support the following for an inadequate-medical-care claim under the Fourteenth Amendment: (1) that the plaintiff had a sufficiently serious medical need and (2) that each defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 315-16 (quoting *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 596 (6th Cir. 2021). This standard is "something akin to reckless disregard." *Brawner*, 14 F.4th at 596 ("[T]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.")

According to Plaintiffs' allegations, Banta was not at the jail when Patrick was brought

7

there for booking. The complaint does not allege that Banta had any involvement with Patrick's detention at all until 3:47 p.m., when he spoke by phone to jail employee Mulder. After that call, Banta went to the jail, where Mulder told him that Patrick's father said Patrick had heat exhaustion and that Patrick's father wanted his son to be released. Banta then helped dress Patrick, took Patrick to his father, and called a local judge to arrange for Patrick's release. (DE 82, Amended Complaint ¶ 54.) The jail released Patrick by 5:30 p.m. (DE 82, Amended Complaint ¶ 55.) Thus, less than two hours passed from the moment Banta learned of Patrick's detention to Patrick's release from jail.

In response to the motion to dismiss, Plaintiffs state that Banta "may have been called earlier" than 3:47 p.m. (DE 132, Response at 10.) The Court is limited to the allegations in the complaint on this motion to dismiss, and Plaintiffs do not allege in the complaint that Banta had any involvement with Patrick's detention until he called the jail at 3:47p.m. Plaintiffs' speculation in its response that Banta "may have" learned earlier of Patrick's detention is not an allegation that the Court can consider. "[A] motion to dismiss cannot be defeated by mere speculation on the part of a plaintiff." *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 839 (6th Cir. 2020).

Plaintiffs argue that Banta could have ordered Patrick's release himself over the phone without getting a judge's approval. In support of that assertion, Plaintiffs cite a Kentucky regulation providing, "Written legal authorization shall be required prior to the release or removal of a prisoner from confinement." 501 KAR 7:120, § 5(1). Kentucky statutes indicate, however, that the "written legal authorization" must come from a "court of competent

8

jurisdiction." KRS 431.520.

Moreover, even if Banta could have himself ordered Patrick's immediate release, Banta's actions to instead obtain the necessary legal authorization from a judge cannot be deemed a constitutional violation. It is undisputed that, after the 3:47 p.m. phone call, Banta took measures to secure Patrick's release. To state a constitutional violation, it is not enough to say that Banta should have gone about securing Patrick's release some other way. Plaintiffs must allege facts from which it could be inferred that Banta made his decision regarding how to secure Patrick's release to either intentionally deprive Patrick of medical care or in reckless disregard of Patrick's medical needs. Plaintiffs do not allege those facts.

Finally, even if Banta's decision to secure Patrick's release through a court order rather than by ordering Patrick's release himself was a constitutional violation, he would be entitled to qualified immunity for this decision. At the pleading stage, a plaintiff defeats a qualified immunity claim "by alleging facts making out a plausible claim that defendant's conduct violated a constitutional right that was clearly established law at the time of the violation." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016). This means "the right allegedly violated must have been clearly established in a 'particularized' sense, such that a reasonable official confronted with the same situation would have known that his actions would be in violation of that right." *Id.*; *Bambach v. Moegle*, 92 F.4th 615, 622 (6th Cir. 2024) ("The rights must be sufficiently clear – and defined at a sufficiently precise level – to ensure that 'every reasonable official would have understood that what he is doing violates' those rights.") Plaintiffs cite no case law that would have made clear to Banta that he was violating Patrick's constitutional rights by securing

Patrick's release through judicial authorization.

Moreover, Plaintiffs plead no facts from which it can be determined how much delay the judicial authorization caused in Patrick's release or whether that delay caused Patrick damages.

Patrick also alleges that Banta is liable for the inadequate medical care claim because he was responsible for training and supervising the jail employees who he alleges provided him with inadequate medical care. (DE 82, Complaint, ¶ 32.) "Section 1983 liability will not be imposed solely upon the basis of respondeat superior." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiffs must allege that Banta "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id*. "At a minimum," Plaintiffs must allege that Banta "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id*.

 Plaintiffs argue that Banta was aware of other instances of unconstitutional conduct by jail personnel but did nothing. They cite three prior federal lawsuits against Franklin County filed from 2016 to 2019. (DE 82, Complaint, ¶ 80.)

Plaintiffs do not allege, however, that any of these lawsuits resulted in findings that jail employees failed to provide adequate medical care to detainees in the past. The Court cannot infer simply from the fact that prior complaints have been filed against jail personnel that Banta implicitly approved of, authorized, or acquiesced in depriving detainees of adequate medical care. "[C]omplaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all." *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985).

Moreover, Banta cannot be liable in his individual capacity under § 1983 for a failure to

train law enforcement officers. Plaintiffs do not sufficiently allege that Banta was personally involved in any alleged constitutional violation. Thus, the claim that Banta is liable for those alleged violations because the officers were not adequately trained "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Harvey v. Campbell Cnty.*, Tenn., 453 F. App'x 557, 563 (6th Cir. 2011) (quoting *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008)); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). Thus, even if Patrick did adequately allege that Banta was a county policymaker and was deliberately indifferent to the need for officer training in a particular area, "he would be liable, if at all, in his official capacity, i.e., rendering the County liable." *Id.*

That Plaintiffs have improperly conflated the standards for individual and municipal liability is made clear in their response brief. In arguing that Banta should be held individually liable for failing to train and supervise jail personnel, Plaintiffs set forth the standard for municipal liability under § 1983. (DE 132, Response at 11) (citing *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014)).

Accordingly, Patrick's constitutional claims under § 1983 against Jailer Banta, in his individual capacity, must be dismissed.

### C.  Section 1983 Conspiracy Claim

As to Patrick's claim for a conspiracy to violate his rights under § 1983, he sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of

11

Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.)

Patrick alleges that the city of Frankfort and the police officers became involved in the plot because the officers were "smitten" with the nurses at the Medical Center and dependent on the nurses for their own medical care. (DE 82, Amended Complaint ¶ 56.) Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶¶ 56, 75, 77, 79, 85.) He does not allege, however, that Banta or anyone employed by the jail agreed with any of the other defendants to violate any of Patrick's rights. Nor does he allege that Banta agreed with other jail personnel to violate Patrick's rights.

For a § 1983 conspiracy, a plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)

12

(citations omitted).

Patrick's allegations in support of his conspiracy claims are speculative at best. He alleges that the housekeeping staff was mad at his father for disciplining a staff member and so they plotted with the Medical Center staff to mistreat Patrick while he was in the emergency room. Plaintiffs never state who took part in the conversations between the housekeeping staff and the medical personnel, when they occurred, or precisely what was said. Nor do they explain why medical professionals were willing to violate their professional responsibilities as alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set forth sufficient facts from which the Court could infer that any agreement or single plan existed among the Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

Because the complaint does not sufficiently plead an agreement or single plan among the housekeeping staff and the medical personnel to mistreat Patrick, it does not sufficiently plead that Banta became involved in any such conspiracy. Furthermore, even if the complaint did sufficiently allege an agreement or single plan among the Medical Center medical personnel and housekeeping staff, the complaint does not make any allegations to support that Banta took part in any such agreement or joined in any single plan. Plaintiffs do not allege that Banta had any communications with Medical Center employees or with employees of the Frankfort police department. Nor do Plaintiffs allege that Banta had communications with any other jail personnel amounting to an agreement or single plan to mistreat Patrick.

Thus, the Court will dismiss Patrick's § 1983 conspiracy claim against Banta for failure to state a claim.

D.      **KCRA Claims**

In their response to the motion to dismiss, Plaintiffs do not address Banta's argument that their claim against him for violation of the KCRA and conspiracy to violate the KCRA should be dismissed. Accordingly, these claims will be dismissed as abandoned.

Further, individuals cannot be held liable under the KCRA unless they qualify as an employer. *Wathen v. Gen. Elec. Co*., 115 F.3d 400, 401, 405 (6th Cir. 1997). *See also Colter v. Bowling Green-Warren Cnty. Reg'l Airport Bd*., No. 1:17-CV-00118-JHM, 2017 WL 5490920, at *6 (W.D. Ky. Nov. 15, 2017) (quoting *Fugate v. Babcock & Wilcox Conversion Servs. LLC*, No. 5:14-CV-00172, 2015 WL 1758063, at * 5 (W.D. Ky. Apr. 17, 2015)).

As to Patrick's claim against Banta for conspiring to violate his rights under the KCRA, this claim necessarily requires allegations that would support a reasonable inference of some single plan or agreement among the defendants to violate the statute. *See Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co.*, 277 S.W. 3d 255, 261 (Ky. App. 2008) (discussing a civil conspiracy claim under Kentucky law). As discussed above, Plaintiffs do not sufficiently allege that any such single plan or agreement existed or that Banta entered into any such plan or agreement.

E.  **State Law Tort Claims**

1)  **Negligence**

To establish negligence, a plaintiff must show the defendant owed him a duty, the duty was breached, and there is a causal connection between the breach and the injury suffered. *Mullins v. Comm. Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Banta owed a duty of care to the jail

14

detainees, but a jailer "cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006) (quoting *Lamb v. Clark*, 138 S.W.2d 350, 352 (Ky. 1940)). For a jail employee to be liable for negligence for an injury suffered by a detainee, "the employee must either know or have reason to know that the prisoner is at risk of harm and fail to take reasonable care to prevent the prisoner from harm." *Jerauld ex rel. Robinson v. Kroger*, 353 S.W.3d 636, 640 (Ky. App. 2011).

Plaintiffs have alleged no facts from which it could be fairly inferred that Banta knew or had reason to know that Patrick faced a risk of harm because of his medical condition or that Patrick needed medical care and then did nothing. In fact, Plaintiffs allege that, upon being informed of Patrick's detention, Banta went to the jail and engaged only in actions that secured Patrick's release. (DE 82, Amended Complaint ¶¶ 54-55.)

Patrick claims that Banta negligently trained and supervised jail staff. (DE 82, Amended Complaint ¶ 109.) "To succeed on a claim for negligent training and supervision, the plaintiff must establish that (1) the employer knew or had reason to know of the risk that the employee created; (2) the employee injured the plaintiff; and (3) the hiring, supervision and/or retention of the employee proximately caused the injury." *Short v. Marvin Keller Trucking, Inc*., 570 F. Supp. 3d 459, 467 n.4 (E.D. Ky. 2021) (citing *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005)).

Plaintiffs allege no facts from which it can be inferred that Banta knew or had reason to know that any of the jail employee defendants in this action posed a foreseeable risk that jail detainees would be denied adequate medical care. Plaintiffs allege that Banta knew from the

15

allegations and discovery in prior lawsuits that "jail personnel were not following the very policies and procedures at issue in this litigation." (DE 82, Complaint, ¶ 80.) As discussed, Plaintiffs cite three prior federal lawsuits against Franklin County filed from 2016 to 2019. (DE 82, Complaint, ¶ 80.) Plaintiffs do not allege, however, that any of these lawsuits resulted in findings that the jail employees in this action failed to provide adequate medical care to detainees in the past. The Court cannot infer simply from the fact that complaints have been filed against jail personnel that Banta should have known that the jail personnel in this action posed a risk to jail detainees being provided adequate medical care.

Even if Plaintiffs had sufficiently pleaded a negligence claim against Banta, he would be entitled to qualified official immunity. Public officers and employees sued in their individual capacities are entitled to "qualified official immunity" when their acts were (1) discretionary (2) made in good faith, and (3) within the scope of the employee's authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Qualified official immunity extends to intentional torts and negligence claims. *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 253 (6th Cir. 2019) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016)). Conversely, no immunity is afforded for the performance of a ministerial act. *Yanero*, 65 S.W. 3rd at 522.

"Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was in bad faith]." *Id*. at 523.

Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id*. at 522.

16

Plaintiffs do not respond to Banta's argument that he is entitled to qualified official immunity for the state law claims. They do not dispute that Banta's acts were discretionary. Further, a jailer's decision to not provide a detainee with medical care requires judgment as to whether the detainee needs medical care and is, thus, discretionary. *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 681 (E.D. Ky. 2002); *Williams v. Kenton Cnty., KY*, No. 2: 21-80-WOB-CJS, 2023 WL 2053068, at *15 (E.D. Ky. Feb. 16, 2023), *appeal dismissed sub nom. Williams v. Kenton Cnty., Kentucky*, No. 23-5206, 2023 WL 8717231 (6th Cir. Dec. 18, 2023). "Supervision and training are discretionary functions. *Nichols v. Bourbon Cnty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014) (citing *Rowan County v. Sloas*, 201 S.W.3d 469, 480 (Ky.2006); *Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 973 (6th Cir.2006)). Plaintiffs do not dispute that Banta's actions that form the basis for their failure-to-train-and-supervise claim were discretionary.

As to whether Plaintiff has made sufficient allegations that Banta acted in bad faith when he failed to provide medical care to Patrick or when he trained and supervised his employees, "'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position . . . or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

"Cases are indeed rare where one admits an improper motive." S*loas*, 201 S.W.3d at 481. Thus, most often bad faith is established with "proof of a violation of a 'clearly established right'

of the plaintiff, which 'a person in the public employee's position presumptively would have known was afforded to a person in the defendant's position.'" *Id*. (quoting *Yanero*, 65 S.W.3d at 523. Plaintiffs have not sufficiently alleged that Banta violated any of Patrick's clearly established rights. Accordingly, he is entitled to qualified official immunity on Plaintiffs' negligence claims.

For all these reasons, Patrick's negligence claim against Banta must be dismissed.

### 2) IIED, NIED, and Defamation Claims

Plaintiffs assert intentional and negligent infliction of emotional distress claims against Banta and a claim for defamation. Plaintiffs do not allege that Banta himself made any defamatory statements.

As to the emotional distress claims, Plaintiffs allege only that Banta became involved in Patrick's detention at 3:47 p.m. with the phone call with Mulder. At some point between that phone call and Patrick's release at about 5:30 p.m. (less than two hours), Banta arrived at the jail, learned that Patrick's father said Patrick "got heat exhaustion at work," helped Patrick get dressed, escorted Patrick to Patrick's father, called a local judge to arrange for Patrick's release, and helped Patrick's father hold Banta up for the release hearing, after which Patrick was released. (DE 82, Amended Complaint ¶¶ 54-55.)

None of these acts could constitute conduct that is so outrageous and intolerable "that it offends against the generally accepted standards of decency and morality" as is required for an IIED claim. *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. App. 2001). These actions could not even constitute the negligent conduct required for an NIED claim. Nor could these actions possibly support a defamation claim.

18

In their complaint, Plaintiffs do not allege that any of these actions are sufficient to state emotional distress or defamation claims. Instead, they assert these claims against Banta "on the basis of respondeat superior." (DE 82, Amended Complaint, ¶¶ 91, 99, 116.) "It has long been established that there is no vicarious liability on the part of a public official for acts of subordinates in which the official was not directly involved." *Franklin Cnty., Ky. v. Malone*, 957 S.W.2d 195, 199 (Ky. 1997), o*verruled on other grounds by Com. v. Harris*, 59 S.W.3d 896 (Ky. 2001), and *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). A public officer can, however, "be subject to personal liability in tort for hiring an employee known to that officer to be incompetent to perform the task for which he/she was hired." *Yanero*, 65 S.W.3d at 528. *See also Osborne v. Aull,* No. 2010-CA-001073-MR, 2012 WL 3538276, at *6 (Ky. App. Aug. 17, 2012).

Thus, for a public official like Banta to be liable for the acts of his employees, "he must have either employed persons he knew to be incompetent for their positions or he must have been somehow directly involved in the alleged negligent acts of his subordinates." *Juillerat v. United States*, No. 3:16-CV-00276-TBR, 2016 WL 6156179, at *6 (W.D. Ky. Oct. 21, 2016). The Court has found no authority indicating that the law is different for intentional torts committed by an official's subordinates.

Plaintiffs do not allege that Banta was directly involved in the allegedly tortious acts of his subordinates. Nor do they allege that he employed anyone he knew was incompetent.

Moreover, as to the NIED claim by Patrick's father, mother, and wife, "[t]he case law is clear. Public officials owe the general public no duty of care unless the public official has some particular 'special relationship' with the injured party." *Hoffman v. Patterson*, 659 S.W.3d 839,

19

842 (Ky. Ct. App. 2021). For the special relationship to exist "the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred." *Id.* Plaintiffs do not allege that Patrick's parents or his wife were in custody at the time of the events in question. Accordingly, they fail to allege that Banta had any duty to them as is required for an NIED claim.

Accordingly, the Court will dismiss Plaintiff's claims for IIED, NIED, and defamation against Banta.

### 3) Wrongful Detention

The facts set forth in the complaint to support Patrick's wrongful detention claim against Banta all deal with the jail personnel's alleged failure to provide adequate medical care to Patrick while he was incarcerated. (DE 82, Amended Complaint ¶104-05.) A wrongful detention claim, however, is not based on the failure to provide medical care to a detainee while in jail. Instead, it is based on the detention of an individual without probable cause, which "can happen when the police hold someone without any reason before the formal onset of a criminal proceeding" or "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017). Plaintiffs do not allege in their complaint that Banta took any actions that caused or wrongfully prolonged Patrick's detention without probable cause. Accordingly, the Court will dismiss any claim against Banta based on wrongful detention.

### III.  Conclusion

For all these reasons, the Court hereby ORDERS as follows:

20

1) Jailer Jake Banta's motion to dismiss (DE 130) is GRANTED; and

2) all Plaintiffs' claims against Banta are DISMISSED.

This 31st day of July, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

21