UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| PATRICK J. HOLLON, *et al.* | CIVIL ACTION NO. 3:22-CV-52-KKC |
| Plaintiffs, | |
| V. | **OPINION AND ORDER** |
| HCA HEALTCHARE, INC., *et al.* | |
| Defendants. | |

*** *** ***

This matter is before the Court on the motion to dismiss (DE 137) filed by defendant Franklin County. For the following reasons, the Court will grant the motion.

**I. Factual Allegations**

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16, 2022, he became extremely ill while working the night shift at his job at Audia International, Inc. in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.) It was 93 degrees at Patrick's workplace, and he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on June 16, 2022. (DE 82, Complaint, ¶ 39.) Plaintiffs allege that the EMTs told the Medical Center

staff that Patrick was suffering from heatstroke. The Medical Center staff nevertheless misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.) According to Plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 1-2, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) Plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) Plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heatstroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022, but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now the plaintiffs' Second Amended Complaint. It asserts claims against five groups of defendants: 1) the Medical Center, certain of its officers and directors, and certain employees of the Medical Center or individuals who work

2

there; 2) HCA Healthcare, Inc. (which the plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain Frankfort Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which the plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

In the complaint, Patrick asserts a claim under 42 U.S.C. § 1983 that all the defendants (including the county) violated his constitutional rights against false arrest, cruel and unusual punishment, and excessive force and his constitutional right to adequate medical care while in pretrial detention. He also asserts that all the defendants conspired to violate his federal constitutional rights. Patrick also asserts that all the defendants violated his rights under the Kentucky Civil Rights Act and that they all conspired to violate his rights under the KCRA. Patrick also asserts state law claims against the county and other defendants for intentional and negligent infliction of emotional distress, wrongful detention, negligence, and defamation. Finally, Patrick's wife, mother, and father also assert claims for negligent and intentional infliction of emotional distress against the county and other defendants.

The county moves to dismiss all claims against it. In its motion, it relies on the arguments it made in the motion to dismiss the claims against Franklin County Jailer Jacob Banta in his official capacity, which are treated as claims against the county. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In that motion, Franklin County argued that the claims against Jailer Banta in his official capacity should be dismissed because Patrick had not sufficiently alleged a § 1983

3

claim against the county for municipal liability (DE 130-1 Mem 19-21) and because the state-law claims are barred by sovereign immunity (DE 130-1 Mem. 22-23.) The Court did not address these arguments in the opinion on Jailer Banta's motion to dismiss. Instead, the Court dismissed the claims against Banta in his official capacity because they were redundant to the claims against the county. (DE 144 Opinion.)

## II. Analysis

### A. Constitutional claims against the County

The county can be held liable for Patrick's claims under § 1983 only if "its policy or custom cause[d] the constitutional violation in question." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005). It cannot be liable solely because an employee committed a constitutional violation. *Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302, 312 (6th Cir. 2023).

> A plaintiff can allege such a policy or custom in four ways. He can allege:
>
> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) the existence of a policy of inadequate training or supervision; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

In response to the motion to dismiss, Patrick clarifies that the constitutional right he claims the county violated and conspired to violate was his right to adequate medical care. He claims the county was intentionally indifferent to "an obvious and serious medical condition of a

4

detainee requiring treatment." (DE 139 Response 3.)

For this claim, Patrick first argues that the county can be liable for the acts or omissions of its employees. (DE 139 Response 4-5.) This is incorrect. "Section 1983 liability will not be imposed solely upon the basis of respondeat superior." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A county is liable under § 1983 only if "its policy or custom cause[d] the constitutional violation in question." *Miller*, 408 F.3d at 813.

The county can be liable if "an official with final decision making authority ratified illegal actions." *Jackson*, 925 F.3d at 828. Plaintiffs assert in the complaint that they are "informed" and "believe" that Jailer Banta establishes "customs, practice, and policy" for the jail. (DE 82 Amended Complaint ¶ 32.) Plaintiffs set forth no facts or law, however, from which it could be inferred that a county jailer is "vested with final authority to set medical treatment policy for the county's prisoners." *Johnson v. Hardin Cnty., Ky.*, 908 F.2d 1280, 1286 (6th Cir. 1990). The Sixth Circuit has determined that Kentucky statutes "suggest that it is the fiscal court of the county that establishes policy and the jailer who carries out these policies" regarding medical care in jails. *Id*. at 1287 (citing Ky. Rev. Stat. §§ 67.080(2)(d) ("The fiscal court shall . . . provide for the incarceration of prisoners according to the provisions of KRS Chapter 441."); 67.083(3)(e), and 441.045(1)). As the Sixth Circuit noted, Kentucky state law specifically states that "th county governing body shall prescribe rules for the government, security, safety, and cleanliness of the jail and the comfort and treatment of prisoners, provided such rules are consistent with state law." Ky. Rev. Stat. Ann. § 441.045(1); *Johnson*, 908 F.2d at 1286 ("State law contemplates that the

5

authority to promulgate policies for the care of prisoners is not vested in the jailer, but in the fiscal court. Ky.Rev.Stat.Ann. § 441.045(1).")

Regardless, even if the jailer has final decision-making authority to set county policy regarding the medical treatment for jail detainees, Patrick has made no allegations from which it could be inferred that Jailer Banta ratified any illegal actions.

Next, Patrick argues that the county can be held liable because it failed to train and supervise the jail employees. (DE 139 Response 5.) For most claims of municipal liability based on theories of "inaction," like failure to train or supervise, plaintiffs must allege the existence of a "clear and persistent pattern" of unconstitutional conduct by county employees. *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014). In his complaint, Patrick lists three lawsuits filed against the county from 2016 to 2019. (DE 82 Amended Complaint ¶ 80.) Patrick does not allege, however, that any of these lawsuits resulted in findings that jail employees failed to provide adequate medical care to detainees.

He asserts in his response to the motion to dismiss that one of these actions settled and that judgment was entered for the defendants in a second action. (DE 139 Response 14, 15.) The Court has reviewed the docket for the third action. The plaintiff in that action settled also. (*Love v. Franklin County, KY, et al.*, Case No. 3:18-23 (filed May 7, 2018), DE 159 Sixth Circuit Opinion 1; DE 150 Jt. Motion to Dismiss.) It cannot be inferred simply from the fact that three prior complaints have been filed against jail personnel over a three-year period beginning in 2016 that the county failed to adequately train its employees on the need to provide adequate medical care to detainees. "[C]omplaints filed, without more, indicates nothing. People may file

6

a complaint for many reasons, or for no reason at all." *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985). Moreover, even if all three of these cases had resulted in findings that jail employees failed to provide adequate medical care, that would not be sufficient to establish a "clear and persistent pattern" of unconstitutional conduct by county employees. *D'Ambrosio*, 747 F.3d at 388.

In addition to alleging a pattern of constitutional violations, plaintiffs can also state a failure-to-train claim by alleging "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . . ." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). This mode of proof is "available in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (internal quotations, brackets and citation omitted). For example, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton, Ohio*, 489 U.S. 378, 390 n.10 (1989) (citation omitted).

In such cases, the likelihood that a constitutional violation will occur "could lead to a finding that the policymaker's decision not to train reflects deliberate indifference" to the violation of that constitutional right. *Shadrick*, 805 F.3d at 739. Likewise, "[t]he high degree of predictability" may also support an inference that the municipality's indifference caused the

7

constitutional violation that was so predictable. *Id*. (citation omitted).

Here, the need to train jail employees on the constitutional requirements to provide adequate medical care to detainees with a serious medical need would be so obvious that a failure to do so could be characterized as a deliberate decision in reckless disregard to an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024).

Patrick does not allege, however, that the county has the responsibility for training jail employees. By statute, that responsibility falls to the Kentucky Department of Corrections, not the county. Ky. Rev. Stat. §§ 441.115, 441.005(5); *see also Paul v. Whiley Cnty. Det. Ctr.*, 712 F. Supp. 3d 907, 926 (E.D. Ky. 2024), *aff'd* No. 24-5142, 2024 WL 4362260 (6th Cir. Sept. 30, 2024) ("First, by statute, the Fiscal Court has no oversight over the training standards for county jails; that authority belongs to the Department of Corrections. *See* Ky. Rev. Stat. §§ 441.055(1)(a)(1)(d), 441.115(1)").

For all these reasons, the Court will dismiss the § 1983 claim against the county.

As to the claim that the county conspired with the other defendants to violate Patrick's constitutional rights, Patrick sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father

8

disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.) Patrick alleges that the city of Frankfort and the police officers became involved in the plot because the officers were "smitten" with the nurses at the Medical Center and dependent on the nurses for their own medical care. Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶ 56, 75, 77, 79, 85.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

For a § 1983 conspiracy claim, a plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and

9

"vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted).

Patrick's allegations in support of his conspiracy claims are speculative at best. He alleges that the housekeeping staff was mad at his father for disciplining a staff member and so they plotted with the Medical Center staff to mistreat Patrick while he was in the emergency room. He never states who took part in the conversations between the housekeeping staff and the medical personnel, when they occurred, or precisely what was said. Nor does he explain why the Medical Center staff was willing to violate their professional responsibilities as alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set forth sufficient facts from which the Court could infer that any agreement existed among the Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

Because the complaint does not sufficiently plead an agreement among the housekeeping staff and the medical personnel to mistreat Patrick, it does not sufficiently plead that the county became involved in any such conspiracy. Furthermore, even if the complaint sufficiently alleged an agreement among the Medical Center medical personnel and housekeeping staff, it does not identify any county decisionmakers who had any discussions with any medical personnel involving a plan to mistreat Patrick or even allege any such discussions occurred.

Thus, the Court will dismiss Patrick's § 1983 conspiracy claims against the county for failure to state a claim.

**B. State Law Claims against the County**

In addition to federal constitutional claims, Patrick also asserts state law claims for

violation of the Kentucky Civil Rights Act ("KCRA") and conspiracy to do the same and for intentional and negligent infliction of emotional distress, wrongful detention, negligence, and defamation against the county. Patrick's wife, father, and mother also assert claims for intentional and negligent infliction of emotional distress against the county. These claims are barred by sovereign immunity. "Sovereign immunity bars state-law actions against county governments." *Doe v. Magoffin Cnty. Fiscal Ct.*, 174 F. App'x 962, 971 (6th Cir. 2006). Plaintiffs make no allegations for which it could be inferred that the county has waived its immunity.

### III.     Conclusion

For all these reasons, the Court hereby ORDERS that county's motion to dismiss (DE 137) the Second Amended Complaint against it is GRANTED; all claims against Franklin County by all plaintiffs are DISMISSED; and Franklin County is DISMISSED as a defendant in this action.

This 7th day of February, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY