UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| **PATRICK J. HOLLON,** *et al.* | CIVIL ACTION NO. 3:22-CV-52-KKC |
| Plaintiffs, | |
| V. | **OPINION AND ORDER** |
| **HCA HEALTCHARE, INC.,** *et al.* | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motions under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings (DE 136, 146) filed by defendant Frankfort Regional Medical Center and six of its employees.

Also before the Court are motions by defendants David Muncy, M.D., (DE 148) and West Kentucky Correctional Healthcare and two of its employees, identified as "Nurse Thacker" and "Nurse Trivette," (DE 151) to join in one of these motions for judgment on the pleadings.

I.  Factual Allegations

Plaintiff Patrick Hollon alleges that, on the night of June 15 or early morning of June 16, 2022, he became extremely ill while working the night shift at his job at Audia International, Inc. in Frankfort, Kentucky. (DE 82, Complaint, ¶ 37.) It was 93 degrees at Patrick's workplace, and

he became confused and dizzy. (DE 82, Complaint, ¶ 37.) At about 2:00 a.m., some coworkers packed him in ice and called 911 for an ambulance. (DE 82, Complaint, ¶ 37.)

The ambulance delivered him to Frankfort Regional Medical Center at about 2:30 a.m. on June 16, 2022. (DE 82, Complaint, ¶ 39.) Plaintiffs allege that the EMTs told the Medical Center staff that Patrick was suffering from heatstroke. The Medical Center staff nevertheless misdiagnosed Patrick as suffering from a drug overdose. (DE 82, Complaint, ¶ 38-39.) According to Plaintiffs, the staff ridiculed Patrick and gave him Narcan, a drug prescribed for opioid overdoses. (DE 1-2, Complaint, ¶ 40.)

After administering Narcan, the Medical Center staff discharged Patrick, but he was in a "collapsed and semi-conscious state," unaware of where he was, and unable to leave. (DE 82, Complaint, ¶¶ 41-42.) The Medical Center staff called the Frankfort Police Department, asking that Patrick be arrested for trespassing. (DE 82, Complaint, ¶ 42.) Plaintiffs allege that the officers who arrived arrested Patrick and used excessive force in transporting him to the Franklin County Jail. (DE 82, Complaint, ¶ 45.) Plaintiffs allege that, while Patrick was in jail, his condition worsened, and jail staff failed to provide necessary medical care. (DE 82, Complaint, ¶ 46.) Plaintiffs allege that jail personnel also used excessive force on Patrick after he was involved in an altercation with another inmate. (DE 82, Complaint, ¶ 53.)

The jail released Patrick at about 5:30 p.m. on June 16, 2022. His father took him to Georgetown Hospital, where the staff diagnosed heatstroke. Patrick was intubated, placed on a ventilator, and put in a medically induced coma. He was released from the hospital on June 20, 2022, but was not cleared to work until July 5, 2022. (DE 82, Complaint, ¶ 55.)

Patrick, his wife, mother, and father then filed a complaint in Franklin Circuit Court. The case was removed to this Court. The operative complaint is now the plaintiffs' Second Amended Complaint. It asserts claims against five groups of defendants: 1) the Medical Center, certain of its officers and directors, and certain employees of the Medical Center or individuals who work there; 2) HCA Healthcare, Inc. (which the plaintiffs assert owns and operates the Medical Center) and certain of its officers and directors; 3) the City of Frankfort, Kentucky and certain Frankfort Police Department law enforcement officers; 4) Franklin County and certain employees of the Franklin County Jail; and 5) West Kentucky Correctional Healthcare, II, LLC (which the plaintiffs assert provides healthcare to inmates at the Franklin County Jail) and three of its nurse employees.

In the complaint, Patrick asserts a state law claim for "negligence (medical malpractice)" against the Medical Center and the six Medical Center employees who filed this motion. (DE 82 Complaint Count I.) He also asserts a state law claim for false arrest against the Medical Center and five of the six employees who filed this motion. (DE 82 Complaint Count II.) He asserts a claim under 42 U.S.C. § 1983 that all the defendants (including the Medical Center and the six employees) violated his constitutional rights against false arrest, cruel and unusual punishment, and excessive force and his constitutional right to adequate medical care while in pretrial detention. (DE 82 Complaint Count III.) He also asserts that all the defendants conspired to violate his federal constitutional rights. (DE 82 Complaint Count III.) Patrick also asserts that all the defendants violated his rights under the Kentucky Civil Rights Act and that they all conspired to violate his rights under the KCRA. (DE 82 Complaint Count IV.) He also asserts state law

3

claims against all the defendants for intentional and negligent infliction of emotional distress (DE 82 Counts V and VI) and defamation (DE 82 Complaint Count IX). He asserts a claim for assault and battery against the Medical Center and five of the six employees who filed this motion. (DE 82 Complaint Count X.) He asserts a claim against the Medical Center for violation of EMTALA. (DE 82 Complaint Count XI.) Finally, Patrick's wife, mother, and father also assert claims for negligent and intentional infliction of emotional distress against all the defendants. (DE 82 Complaint Counts V and VI.)

With these motions, the Medical Center and the six employees move to dismiss the constitutional claims under 42 U.S.C. § 1983, the claims under the KCRA (DE 136 Motion), and the medical malpractice claim. (DE 146 Motion.) Defendants David Muncy, M.D, West Kentucky Correctional Healthcare and Nurses Thacker and Trivette move to join in the motion for dismissal of the medical malpractice claim.

## II. Analysis

### A. Constitutional claims against these Defendants

The Medical Center and its employees move to dismiss the claim against them under § 1983 because they are private entities that cannot be held liable under § 1983 and because Patrick has failed to adequately plead that these defendants took part in a conspiracy to violate Patrick's constitutional rights.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. at 49 (quotations and citation omitted). "[S]tate employment is generally sufficient to render the defendant a state actor." *Id*. (citations omitted).

In his response, Patrick does not dispute that these moving defendants were not state actors at the time of the alleged events. He makes clear that the reason he argues that a § 1983 claim can nonetheless be asserted against these defendants is because these private actors conspired with state actors to violate Patrick's constitutional rights. Patrick explicitly states that, for his § 1983 claim against these defendants, "Patrick pleads and relies upon conspiracy." (DE 138 Response 16.) Patrick argues that "state action can be established when a private party conspires with a state actor." (DE 138 Response 16.)

This is true. "A conspiracy between private and state actors can expose the private parties to § 1983 liability." *Partin v. Davis*, 675 F. App'x 575, 587 (6th Cir. 2017). Patrick sets forth the basis for his conspiracy claims in paragraph 75 of the complaint. He alleges that the medical personnel at the Medical Center "agreed to harass and abuse" him because they had "ill-will" toward Patrick's father. (DE 82, Amended Complaint ¶ 75.) Patrick's father is the Director of Environmental Services at the Medical Center. His responsibilities include supervising and disciplining members of the Medical Center's housekeeping staff. (DE 82, Amended Complaint ¶ 2.) At some point, Patrick's father disciplined a member of the housekeeping staff for failing to adequately perform his or her duties. (DE 82, Amended Complaint ¶ 56.) Patrick alleges that, in

5

response, "a revenge plot was hatched to make Patrick, Wife, Mother, and Father all suffer. . . ." (DE 82, Amended Complaint ¶ 56.) Patrick alleges that the city of Frankfort and the police officers became involved in the plot because the officers were "smitten" with the nurses at the Medical Center and dependent on the nurses for their own medical care. Thus, Patrick alleges, the officers were unable to decline the medical personnel's demand that they falsely arrest Patrick. (DE 82, Amended Complaint ¶ 56, 75, 77, 79, 85.)

Motions by defendants under Rule 12(c) are assessed under the same standard that applies to a motion to dismiss under Rule 12(b)(6). *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation omitted). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570.

For a § 1983 conspiracy claim, a plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and

"vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted).

Patrick's allegations in support of his conspiracy claims are speculative at best. He alleges that the housekeeping staff was mad at his father for disciplining a staff member and so they plotted with the Medical Center medical personnel to mistreat Patrick while he was in the emergency room. He never states who took part in the conversations between the housekeeping staff and the medical personnel, when they occurred, or precisely what was said. Nor does he explain why the medical personnel were willing to violate their professional responsibilities as alleged simply because the housekeeping staff demanded it. Thus, the complaint does not set forth sufficient facts from which it could be reasonably inferred that any agreement existed among the Medical Center's housekeeping staff and medical personnel to mistreat Patrick.

The allegations Patrick makes in support of his assertion that the conspiracy extended from the Medical Center medical personnel to the Frankfort police officers are as speculative. Patrick asks the Court to infer an agreement among the police officers and medical personnel to violate Patrick's constitutional rights based upon unsupported assertions about a relationship between the police officers and Medical Center nurses that rendered the officers unable to refuse the nurses' request that they violate Patrick's constitutional rights. Patrick alleges that the Medical Center employees reported Patrick as a trespasser to Frankfort police officers as part of the "revenge plot" against Patrick's dad devised by the Medical Center housekeeping staff. He alleges that the officers knew Patrick was not trespassing but still agreed to arrest him because the officers depend upon hospital personnel for medical care and because they were "smitten

7

with" the nurses at the Medical Center. Patrick alleges that, because of this "incestuous and very close relationship," the officers "were emotionally unable to decline the demand to arrest Patrick," were "more than willing to bend the law" and could not "confront and disappoint the nurses." (DE 82 Complaint ¶ 56.)

An agreement cannot reasonably be inferred based upon these unsupported assertions. Thus, the Court will dismiss Patrick's § 1983 claim, including the conspiracy claim, against the Medical Center and its employees for failure to state a claim.

### B. KRCA Claims for Disability Discrimination and Conspiracy

Patrick alleges that all the defendants, including the Medical Center and its employees, violated his rights under the KCRA to be free from disability discrimination and that they conspired with the other defendants to violate that right. For these claims, Patrick asserts that his disability is drug addiction. He asserts that the Medical Center and its personnel "sought to have Patrick arrested and jailed because [the Medical Center] presumed that he was a drug addict." (DE 138 Response 23.) In his complaint, he does not identify which provision of the KCRA he alleges the defendants violated.

The KCRA is intended to "[t]o safeguard all individuals within the state" from discrimination on a variety of bases including because of a "person's status as a qualified individual with a disability. . . ." KRS § 344.020(1)(b). Toward that end, the KCRA prohibits such discrimination by employers (KRS §§ 344.040, 344.045), by employment agencies (KRS § 344.050), by labor organizations (KRS § 344.060), in apprenticeship or training (KRS § 344.070), in advertisement for employment (KRS § 344.080), in renting or selling public

8

accommodations (KRS § 344.120), in the advertisement of goods, services, and accommodations (KRS § 344.140] ), and in restaurants, hotels, motels, or facilities supported by government funds, on the basis of sex (KRS § 344.145] ). *See also Klotz v. Shular*, No. 3:14-CV-00723-GNS, 2015 WL 4556267, at *5 (W.D. Ky. July 28, 2015). The statute also prohibits certain discriminatory practices in the following industries: housing (KRS § 344.360), insurance (KRS § 344.367); financial (KRS § 344.370), and credit (KRS § 344.400). And it prohibits discrimination by a health facility against a health care worker who reports a safety violation or workplace violence. *See* KRS § 344.372.

None of these provisions addresses the kind of disability discrimination Patrick alleges: that the nurses had Patrick falsely arrested because they believed he was a drug addict. The only provision of the KCRA that Patrick cites in his response is KRS § 344.020(1) which sets forth the "general purposes" of the statute. Patrick points out that it provides that the KCRA is intended to "provide for execution within the state of the policies embodied in" various federal statutes, including the Americans with Disabilities Act. Ky. Rev. Stat. Ann. § 344.020(1)(a). Kentucky courts hold that "the KCRA is to be interpreted to provide a state-law vehicle for executing protections similar to those afforded under the federal Americans with Disabilities Act of 1990 (ADA). . . ." *Barnett v. Cent. Kentucky Hauling, LLC*, 617 S.W.3d 339, 343 (Ky. 2021).

Patrick points to no provision of the ADA, however, that addresses the kind of discrimination he alleges here.

Accordingly, the Court will dismiss the KCRA claim and the KCRA conspiracy claim against the Medical Center and its employees. In addition, for the reasons discussed above, the

9

complaint does not sufficiently allege an agreement among any of the defendants to violate Patrick's rights.

### C. Medical Malpractice Claim

With the second motion before the Court, the Medical Center and its employees ask the Court to dismiss Patrick's medical malpractice claim in Count I. They argue that the claim must be dismissed because Patrick failed to comply with KRS § 411.167.

That Kentucky statute requires that a claimant commencing any action against a physician, surgeon, dentist or hospital for negligence or malpractice must file "a certificate of merit with the complaint in the court in which the action is commenced." KRS § 411.167(1). A certificate of merit is defined as an "affidavit or declaration that," as relevant here, states that the claimant has consulted with at least one qualified expert and has concluded as a result that "there is reasonable basis to commence the action." KRS § 411.167(2)(a). There is no dispute that Patrick has not filed the certificate with this action. He argues, however, that the requirement does not apply to an action in federal court. The Court agrees.

In *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), the Sixth Circuit determined that a similar requirement under Ohio state law did not apply to a claim filed in federal court. In that case, the plaintiff filed a claim against the United States under the Federal Tort Claims Act. But the analysis the court applied in *Gallivan* leads to the same answer for Patrick's state medical negligence claim.

In *Gallivan*, the court noted that the Federal Rules govern procedural issues in federal court, citing Federal Rule 1, which expressly states that the Federal Rules of Civil Procedure

10

apply to "all civil actions and proceedings in the United States district courts" with certain exceptions set forth in Rule 81, none of which is applicable here. *Id*. at 294. The court further noted that a valid Federal Rule displaces inconsistent state law. *Id*. at 294-95 (citing *Hanna v. Plummer*, 380 U.S. 460, 471 (1965)).

The relevant question, the court determined, was whether the Federal Rules of Civil Procedure answer the question in dispute: Is a plaintiff required to file an affidavit of merit to state a claim for medical negligence? *Id*. at 293 (citing *Shady Grove v. Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). Looking to Rules 8(a), 9, and 12(b)(6), the court determined the rules did answer that question, and they did not require a plaintiff to file an affidavit with his complaint to state a medical negligence claim. *Id*. Thus, Ohio's affidavit requirement does not apply in federal court. *Id*. at 297.

Here, too, the Kentucky certificate-of-merit requirement is inconsistent with Rules 8(a), 9, and 12(b)(6). Accordingly, it does not apply in federal court.

In their motion, the defendants cite cases in the Eastern and Western Districts of Kentucky that applied the Kentucky certificate-of-merit requirement in federal court. However, the defendants in those cases did not argue that the requirement does not apply in federal courts. That is an argument that can be waived. *See Pryor v. Baptist Health Med. Grp., Inc.*, No. 3:23-CV-584-CHB, 2024 WL 3542377, at *2 (W.D. Ky. July 25, 2024) (stating that plaintiffs argued that the certificate-of-merit requirement did not apply because they brought claims for only ordinary negligence, not medical negligence); *DeMarcus v. Homesteadidence OPCO, LLC*, No. 5:22-CV-32-KKC, 2022 WL 3718480, at *1 n.1 (E.D. Ky. Aug. 29, 2022) ("DeMarcus does not

11

raise *Gallivan* or otherwise argue that the Kentucky certificate-of-merit requirement does not apply in federal court. Accordingly, he has waived the issue."); *Cleaver v. S. Health Partners, Inc.*, No. 3:21-CV-747-BJB-CHL, 2022 WL 1620626, at *2 (W.D. Ky. May 23, 2022) ("Cleaver's filings failed to state a claim and did not include the necessary certificate of merit. Cleaver does not contest either point, instead merely arguing that this Court has supplemental jurisdiction.); *Dumphord v. Gabriel*, No. CV 5:20-461-DCR, 2021 WL 3572658, at *6 n.7 (E.D. Ky. Aug. 12, 2021) ("Dumphord did not address *Gallivan*'s applicability to this case or suggest that Kentucky's requirement is inapplicable under the Federal Rules of Civil Procedure. Accordingly, he has waived the issue.")

The defendants also argue that *Gallivan* should not apply because the Sixth Circuit was considering Ohio's affidavit-of-merit requirement, not Kentucky's comparable requirement. But defendants cite no distinction between the two requirements that would render Kentucky's certificate-of-merit requirement applicable in federal court while Ohio's equivalent requirement is not. Both provisions require that a complaint asserting a medical negligence claim include an affidavit or declaration indicating that an expert has determined that the plaintiff's complaint has merit. Ohio Civ. R. 10(D)(2); KRS § 411.167(1), (2).

The defendants point out that, in *Gallivan*, the Sixth Circuit noted that the Ohio Supreme Court had explicitly found that the Ohio certificate-of-merit requirement constituted a "heightened pleading requirement." *Gallivan*, 943 F.3d at 296 (citing *Fletcher v. Univ. Hosps. of Cleveland*, 897 N.E.2d 147, 150 (Ohio 2008)). They argue that there is no case law holding the same for Kentucky's requirement. But the Ohio Supreme Court's decision was not determinative

in *Gallivan*. The Sixth Circuit made clear that the relevant question was whether the Federal Rules "answer the question in dispute." *Id*. at 293, 296 (citing *Shady Grove*, 559 U.S. at 398). The court determined that the Federal Rules do answer whether a plaintiff must file an affidavit with a medical malpractice claim and that the rules do not require it. *Id*. at 293-94. The answer to that question is the same whether the affidavit of merit is required by Kentucky or Ohio law.

Defendants argue that *Gallivan* does not apply here because it dealt with a claim under the Federal Tort Claims Act and this case deals with a state-law negligence claim. Again, however, the relevant question is whether the Federal Rules address the question at issue. Because they do and do not require a certificate of merit with a complaint, that requirement does not apply in federal court, whether the claim is under the Federal Tort Claims Act or state law.

Moreover, after *Gallivan*, the Sixth Circuit applied the same reasoning and reached the same conclusion in a diversity case in which the plaintiff asserted a state-law medical malpractice claim. *Albright v. Christensen*, 24 F.4th 1039, 1042 (6th Cir. 2022). That case involved an affidavit-of-merit requirement for medical malpractice claims established by a Michigan statute. Mich. Comp. Laws § 600.2912d.

Citing *Gallivan*, the court determined that Federal Rules of Civil Procedure do address whether a plaintiff must provide an affidavit of merit to state a claim for medical malpractice in federal court, and that the rules did not require it. *Id*. at 1046. The court concluded that, because the Michigan statute conflicts with those Federal Rules, it does not apply in federal court. *Id*.

The defendants argue that Kentucky's statute allows for a "temporal separation" between the filing of the complaint and the certificate of merit. (DE 149 Reply 6.) Here, the defendants

13

point to a provision in the statute that allows for filing the certificate of merit after filing the complaint in certain circumstances. Ky. Rev. Stat. Ann. § 411.167(5). Defendants also cite a Kentucky Court of Appeals case indicating that a plaintiff may move to amend a complaint to attach the certificate. *Evans v. Baptist Health Madisonville*, 643 S.W.3d 105, 109 (Ky. Ct. App. 2022). Defendants presumably argue that, if the certificate can be filed after the filing of the complaint, then the certificate is not a pleading requirement. But both the Michigan statute and the Ohio rule at issue in *Albright* and *Gallivan*, respectively, also allow the plaintiff to file the affidavit after filing the complaint in certain circumstances. Mich. Comp. Laws § 600.2912d(2), (3); Ohio Civ. R. 10(D)(2)(b). Further, by indicating in *Evans* that a plaintiff should file a motion to amend his complaint to include a late-filed certificate, the Kentucky Court of Appeals indicated that the certificate is part of the complaint.

The defendants argue that the Kentucky certificate requirement is "substantive" and, therefore applies in federal court. In *Gallivan*, however, the court stated that it "makes no difference" if the state affidavit requirement is substantive. 943 F.3d at 295. "All that matters" is whether the state requirement conflicts with a valid Federal Rule. *Id*.

Finally, the defendants make various arguments that *Gallivan* was wrongly decided because a certificate-of-merit requirement does not, in fact, conflict with the Federal Rules. (DE 149 Reply 5-6.) Defendants also argue that following *Gallivan* will lead plaintiffs to name federal claims or foreign defendants so that they can litigate malpractice claims in federal court rather than state court. Regardless, the Court must follow *Gallivan* and *Albright*, pursuant to which KRS § 411.167's certificate-of-merit does not apply in federal courts. The defendants'

14

motion to dismiss the medical malpractice claim against them will be denied.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the motion for judgment on the pleadings (DE 136) on Patrick's claims under 42 U.S.C. § 1983 and the Kentucky Civil Rights Act, including the claims for conspiracies to violate those statutes, filed by defendants Frankfort Regional Medical Center, Reed Hammond, Betty McDonald, Hollie Jameson, Noel Hearn, Karen Wooldridge, and Emily Owens is GRANTED. All the § 1983 and KCRA claims against these defendants are DISMISSED;

2) the motions for joinder filed by defendants David Muncy, M.D., (DE 148) and West Kentucky Correctional Healthcare, Nurse Thacker and Nurse Trivette (DE 151), in which these defendants request permission to join in the motion for judgment on the pleadings on Patrick's medical malpractice claim, is GRANTED;

3) the motion for judgment on the pleadings (DE 146) on Patrick's claim for medical malpractice filed by defendants Frankfort Regional Medical Center, Reed Hammond, Betty McDonald, Hollie Jameson, Noel Hearn, Karen Wooldridge, Emily Owens, David Muncy, West Kentucky Correctional Healthcare, Nurse Thacker, and Nurse Trivette is DENIED.

This 21st day of February, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY